SEARS, ROEBUCK & CO. *v.* MACKEY ET AL.

No. 34.   Argued February 28, 1956.—Decided June 11, 1956.

*Walter J. Rockler* argued the cause and filed a brief for petitioner.

*Edward I. Rothschild* argued the cause for respondents. With him on a brief for Mackey, respondent, was *John Paul Stevens*.

MR. JUSTICE BURTON delivered the opinion of the Court.

This action, presenting multiple claims for relief, was brought by Mackey and another in the United States District Court for the Northern District of Illinois, Eastern Division, in 1953. The court expressly directed that judgment be entered for the defendant, Sears, Roebuck & Co., on two, but less than all, of the claims presented. It also expressly determined that there was no just reason for delay in making the entry. After Mackey's notice of appeal from that judgment to the Court of Appeals for the Seventh Circuit, Sears, Roebuck & Co. moved to dismiss the appeal for lack of appellate jurisdiction. The Court of Appeals upheld its jurisdiction and denied the

motion, relying upon 28 U. S. C. § 1291 and Rule 54 (b) of the Federal Rules of Civil Procedure, as amended in 1946. 218 F. 2d 295. Because of the importance of the issue in determining appellate jurisdiction and because of a conflict of judicial views on the subject,[1] we granted certiorari. 348 U. S. 970. For the reasons hereafter stated, we sustain the Court of Appeals and its appellate jurisdiction.

Although we are here concerned with the present appealability of the judgment of the District Court and not with its merits, we must examine the claims stated in the complaint so as to consider adequately the issue of appealability.

The complaint contains six counts. We disregard the fifth because it has been abandoned and the sixth because it duplicates others. The claims stated in Counts I and II are material and have been dismissed without leave to amend. The claim contained in Count III and that in amended Count IV are at issue on the answers filed by Sears, Roebuck & Co. The appeal before us is from a

---

[1] For decisions directly or impliedly sustaining the validity of amended Rule 54 (b), as applied in the instant case, see *Rieser* v. *Baltimore & O. R. Co.*, 224 F. 2d 198 (C. A. 2d Cir.), and cases cited at 203, n. 7; *United Artists Corp.* v. *Masterpiece Productions, Inc.*, 221 F. 2d 213 (C. A. 2d Cir.); *Clarksville* v. *United States*, 198 F. 2d 238 (C. A. 4th Cir.); *Boston Medical Supply Co.* v. *Lea & Febiger*, 195 F. 2d 853 (C. A. 1st Cir.); *Bendix Aviation Corp.* v. *Glass*, 195 F. 2d 267 (C. A. 3d Cir.); *Lopinsky* v. *Hertz Drive-Ur-Self Systems, Inc.*, 194 F. 2d 422 (C. A. 2d Cir.), concr. op. of Judge Clark, at 424–430; *Pabellon* v. *Grace Line, Inc.*, 191 F. 2d 169 (C. A. 2d Cir.). See 6 Moore's Federal Practice (2d ed. 1953) 220–230, and Note, 62 Yale L. J. 263.

Contra: See *Rieser* v. *Baltimore & O. R. Co.*, *supra*, concr. op. of Judge Frank, at 205–208; *Bendix Aviation Corp.* v. *Glass*, *supra*, concr. op. of Judge Hastie, at 277–282; *Pabellon* v. *Grace Line, Inc.*, *supra*, concr. op. of Judge Frank, at 176–181; *Flegenheimer* v. *General Mills, Inc.*, 191 F. 2d 237 (C. A. 2d Cir.). See also, *Gold Seal Co.* v. *Weeks*, 93 U. S. App. D. C. 249, 209 F. 2d 802.

judgment striking out Counts I and II without disturbing Counts III and IV, and the question presented is whether such a judgment is presently appealable when the District Court, pursuant to amended Rule 54 (b), has made "an express determination that there is no just reason for delay" and has given "an express direction for the entry of judgment."

In Count I, Mackey, a citizen of Illinois, and Time Saver Tools, Inc., an Illinois corporation owned by Mackey, are the original plaintiffs and the respondents here. Sears, Roebuck & Co., a New York corporation doing business in Illinois, is the original defendant and the petitioner here. Mackey charges Sears with conduct violating the Sherman Antitrust Act in a manner prejudicial to three of Mackey's commercial ventures causing him $190,000 damages, for which he seeks $570,000 as treble damages. His first charge is unlawful destruction by Sears, since 1949, of the market for nursery lamps manufactured by General Metalcraft Company, a corporation wholly owned by Mackey. Mackey claims that this caused him a loss of $150,000. His second charge is unlawful interference by Sears, in 1952, with Mackey's contract to sell, on commission, certain tools and other products of the Vascoloy-Ramet Corporation, causing Mackey to lose $15,000. His third charge is unlawful destruction by Sears, in 1952, of the market for a new type of carbide-tipped lathe bit and for other articles manufactured by Time Saver Tools, Inc., resulting in a loss to Mackey of $25,000. Mackey combines such charges with allegations that Sears has used its great size to monopolize commerce and restrain competition in these fields. He asks for damages and equitable relief.

In Count II, Mackey claims federal jurisdiction by virtue of diversity of citizenship. He incorporates the allegations of Count I as to the Metalcraft transactions and asks for $250,000 damages for Sears' wilful destruc-

tion of the business of Metalcraft, plus $50,000 for Mackey's loss on obligations guaranteed by him.

In Count III, Mackey seeks $75,000 in a common-law proceeding against Sears for unlawfully inducing a breach of his Vascoloy commission contract.

In Count IV, Time Saver seeks $200,000 in a common-law proceeding against Sears for unlawfully destroying Time Saver's business by unfair competition and patent infringement.

The jurisdiction of the Court of Appeals to entertain Mackey's appeal from the District Court's judgment depends upon 28 U. S. C. § 1291, which provides that "The courts of appeals shall have jurisdiction of appeals from *all final decisions* of the district courts of the United States . . . ." (Emphasis supplied.)

If Mackey's complaint had contained only Count I, there is no doubt that a judgment striking out that count and thus dismissing, in its entirety, the claim there stated would be both a final and an appealable decision within the meaning of § 1291. Similarly, if his complaint had contained Counts I, II, III and IV, there is no doubt that a judgment striking out all four would be a final and appealable decision under § 1291. The controversy before us arises solely because, in this multiple claims action, the District Court has dismissed the claims stated in Counts I and II, but has left unadjudicated those stated in Counts III and IV.[2]

Before the adoption of the Federal Rules of Civil Procedure in 1939, such a situation was generally regarded as leaving the appellate court without jurisdiction of an attempted appeal. It was thought that, although the judgment was a final decision on the respective claims in Counts I and II, it obviously was not a final decision of

[2] Sears also contends that the Court of Appeals misconstrued amended Rule 54 (b). See *Flegenheimer* v. *General Mills, Inc., supra.* The meaning of that rule is considered hereafter.

the whole case, and there was no authority for treating anything less than the whole case as a judicial unit for purposes of appeal.[3] This construction of the judicial unit was developed from the common law which had dealt with litigation generally less complicated than much of that of today.[4]

With the Federal Rules of Civil Procedure, there came an increased opportunity for the liberal joinder of claims in multiple claims actions. This, in turn, demonstrated a need for relaxing the restrictions upon what should be treated as a judicial unit for purposes of appellate jurisdiction. Sound judicial administration did not require relaxation of the standard of finality in the disposition of the individual adjudicated claims for the purpose of their appealability. It did, however, demonstrate that, at least in multiple claims actions, some final decisions, on less than all of the claims, should be appealable without waiting for a final decision on *all* of the claims. Largely to

---

[3] At common law, a writ of error did not lie to review a judgment that failed to adjudicate every cause of action asserted in the controversy. See *Holcombe* v. *McKusick*, 20 How. 552; *United States* v. *Girault*, 11 How. 22; *Metcalfe's Case*, 11 Co. Rep. 38a, 77 Eng. Rep. 1193. The rule generally followed in the federal courts was that, in a case involving a single plaintiff and a single defendant, a judgment was not appealable if it disposed of some, but less than all, of the claims presented. See *Collins* v. *Miller*, 252 U. S. 364; *Sheppy* v. *Stevens*, 200 F. 946 (C. A. 2d Cir.). In cases involving multiple parties where the alleged liability was joint, a judgment was not appealable unless it terminated the action as to all the defendants. See *Hohorst* v. *Hamburg-American Packet Co.*, 148 U. S. 262. But if, in a multiple party case, a judgment finally disposed of a claim that was recognized to be separate and distinct from the others, that judgment, under some circumstances, was appealable. See *Republic of China* v. *American Express Co.*, 190 F. 2d 334 (C. A. 2d Cir.).

[4] The appellate jurisdiction of the United States Courts of Appeals, with exceptions not directly pertinent here, is still largely restricted to the review of cases appealed under 28 U. S. C. § 1291. But see *Forgay* v. *Conrad*, 6 How. 201; *Cohen* v. *Beneficial Industrial Loan Corp.*, 337 U. S. 541; 28 U. S. C. §§ 1292, 1651.

meet this need, in 1939, Rule 54 (b) was promulgated in its original form through joint action of Congress and this Court.[5]   It read as follows:

"(b) JUDGMENT AT VARIOUS STAGES.   When more than one claim for relief is presented in an action, the court at any stage, upon a determination of the issues material to a particular claim and all counterclaims arising out of the transaction or occurrence which is the subject matter of the claim, may enter a judgment disposing of such claim.   The judgment shall terminate the action with respect to the claim so disposed of and the action shall proceed as to the remaining claims.   In case a separate judgment is so entered, the court by order may stay its enforcement until the entering of a subsequent judgment or judgments and may prescribe such conditions as are necessary to secure the benefit thereof to the party in whose favor the judgment is entered."

It gave limited relief.   The courts interpreted it as not relaxing the requirement of a "final decision" on each individual claim as the basis for an appeal, but as author-

---

[5] The Supreme Court's authority to promulgate the Federal Rules of Civil Procedure is derived from the Enabling Act, now appearing as 28 U. S. C. § 2072.   It authorizes this Court to promulgate rules governing "the forms of process, writs, pleadings, and motions, and the practice and procedure of the district courts of the United States . . . in civil actions."   It provides that such rules "shall not abridge, enlarge or modify any substantive right . . . ."   And, by reason of Article I, § 8, of the Constitution, it has been held repeatedly that only Congress may define the jurisdiction of the lower federal courts.   See *Sibbach* v. *Wilson & Co.,* 312 U. S. 1; *Baltimore Contractors, Inc.* v. *Bodinger,* 348 U. S. 176; and Fed. Rules Civ. Proc., 82.   "Such rules shall not take effect until they have been reported to Congress by the Chief Justice at or after the beginning of a regular session thereof but not later than the first day of May, and until the expiration of ninety days after they have been thus reported." 28 U. S. C. § 2072.

izing a limited relaxation of the former general practice that, in multiple claims actions, *all* the claims had to be finally decided before an appeal could be entertained from a final decision upon any of them.[6]   Thus, original Rule 54 (b) modified the single judicial unit theory but left unimpaired the statutory concept of finality prescribed by § 1291.   However, it was soon found to be inherently difficult to determine by any automatic standard of unity which of several multiple claims were sufficiently separable from others to qualify for this relaxation of the unitary principle in favor of their appealability.   The result was that the jurisdictional time for taking an appeal from a final decision on less than all of the claims in a multiple claims action in some instances expired earlier than was foreseen by the losing party.   It thus became prudent to take immediate appeals in all cases of doubtful appealability and the volume of appellate proceedings was undesirably increased.

Largely to overcome this difficulty, Rule 54 (b) was amended, in 1946, to take effect in 1948.[7]   Since then it has read as follows:

> "(b) JUDGMENT UPON MULTIPLE CLAIMS.   *When more than one claim for relief is presented in an action,* whether as a claim, counterclaim, cross-claim, or third-party claim, *the court may direct the entry of a final judgment upon one or more but less than all of the claims only upon an express determination*

---

[6] See *Pabellon* v. *Grace Line, Inc., supra,* at 174.

[7] ". . . situations arose where district courts made a piecemeal disposition of an action and entered what the parties thought amounted to a judgment, although a trial remained to be had on other claims similar or identical with those disposed of.   In the interim the parties did not know their ultimate rights, and accordingly took an appeal, thus putting the finality of the partial judgment in question."   Report of Advisory Committee on Proposed Amendments to Rules of Civil Procedure 70–71 (June 1946).

*that there is no just reason for delay and upon an express direction for the entry of judgment.* In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all the claims shall not terminate the action as to any of the claims, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims." (Emphasis supplied.)

In this form, it does not relax the finality required of each decision, as an individual claim, to render it appealable, but it does provide a practical means of permitting an appeal to be taken from one or more final decisions on individual claims, in multiple claims actions, without waiting for final decisions to be rendered on *all* the claims in the case. The amended rule does not apply to a single claim action nor to a multiple claims action in which all of the claims have been finally decided. It is limited expressly to multiple claims actions in which "one or more but less than all" of the multiple claims have been finally decided and are found otherwise to be ready for appeal.

To meet the demonstrated need for flexibility, the District Court is used as a "dispatcher." It is permitted to determine, in the first instance, the appropriate *time when each "final decision"* upon "one or more but less than all" of the claims in a multiple claims action is ready for appeal. This arrangement already has lent welcome certainty to the appellate procedure. Its "negative effect" has met with uniform approval. The effect so referred to is the rule's specific requirement that for "one or more but less than all" multiple claims to become appealable, the District Court must make both "an express determination that there is no just reason for delay" and "an express direction for the entry of judgment." A party adversely affected by a final decision thus knows that

his time for appeal will *not* run against him until this certification has been made.[8]

In the instant case, the District Court made this certification, but Sears, Roebuck & Co. nevertheless moved to dismiss the appeal for lack of appellate jurisdiction under § 1291. The grounds for such a motion ordinarily might be (1) that the judgment of the District Court was not a decision upon a "claim for relief," (2) that the decision was not a "final decision" in the sense of an ultimate disposition of an individual claim entered in the course of a multiple claims action, or (3) that the District Court abused its discretion in certifying the order.

In the case before us, there is no doubt that each of the claims dismissed is a "claim for relief" within the meaning of Rule 54 (b), or that their dismissal constitutes a "final decision" on individual claims. Also, it cannot well be argued that the claims stated in Counts I and II are so inherently inseparable from, or closely related to, those stated in Counts III and IV that the District Court has abused its discretion in certifying that there exists no just reason for delay. They certainly *can* be decided independently of each other.

Petitioner contends that amended Rule 54 (b) attempts to make an unauthorized extension of § 1291. We disagree. It could readily be argued here that the claims stated in Counts I and II are sufficiently independent of those stated in Counts III and IV to satisfy the requirements of Rule 54 (b) even in its original form. If that were so, the decision dismissing them would also be appealable under the amended rule. It is nowhere contended today that a decision that would have been appealable under the original rule is not also appealable under the amended rule, provided the District Court makes the required certification.

---

[8] For favorable comment on this aspect of the rule, see *Dickinson* v. *Petroleum Corp.*, 338 U. S. 507, 511–512.

While it thus might be possible to hold that in this case the Court of Appeals had jurisdiction under original Rule 54 (b), there at least would be room for argument on the issue of whether the decided claims were separate and independent from those still pending in the District Court.[9] Thus the instant case affords an excellent illustration of the value of the amended rule which was designed to overcome that difficulty. Assuming that the requirements of the original rule are not met in this case, we nevertheless are enabled to recognize the present appellate jurisdiction of the Court of Appeals under the amended rule. The District Court *cannot,* in the exercise of its discretion, treat as "final" that which is not "final" within the meaning of § 1291. But the District Court *may,* by the exercise of its discretion in the interest of sound judicial administration, release for appeal final decisions upon one or more, but less than all, claims in multiple claims actions. The timing of such a release is, with good reason, vested by the rule primarily in the discretion of the District Court as the one most likely to be familiar with the case and with any justifiable reasons for delay. With equally good reason, any abuse of that discretion remains reviewable by the Court of Appeals.

Rule 54 (b), in its original form, thus may be said to have modified the single judicial unit practice which had been developed by court decisions. The validity of that rule is no longer questioned. In fact, it was applied by this Court in *Reeves* v. *Beardall,* 316 U. S. 283, without its validity being questioned.

---

[9] In the instant case, the claim dismissed by striking out Count I is based on the Sherman Act, while Counts III and IV do not rely on, or even refer to, that Act. They are largely predicated on common-law rights. The basis of liability in Count I is independent of that on which the claims in Counts III and IV depend. But the claim in Count I does rest in part on some of the facts that are involved in Counts III and IV. The claim stated in Count II is clearly independent of those in Counts III and IV.

Rule 54 (b), in its amended form, is a comparable exercise of the rulemaking authority of this Court. It does not supersede any statute controlling appellate jurisdiction. It scrupulously recognizes the statutory requirement of a "final decision" under § 1291 as a basic requirement for an appeal to the Court of Appeals. It merely administers that requirement in a practical manner in multiple claims actions and does so by rule instead of by judicial decision. By its negative effect, it operates to restrict in a valid manner the number of appeals in multiple claims actions.

We reach a like conclusion as to the validity of the amended rule where the District Court acts affirmatively and thus assists in properly timing the release of final decisions in multiple claims actions. The amended rule adapts the single judicial unit theory so that it better meets the current needs of judicial administration. Just as Rule 54 (b), in its original form, resulted in the release of some decisions on claims in multiple claims actions before they otherwise would have been released,[10] so amended Rule 54 (b) now makes possible the release of more of such decisions subject to judicial supervision. The amended rule preserves the historic federal policy against piecemeal appeals in many cases more effectively than did the original rule.[11]

Accordingly, the appellate jurisdiction of the Court of Appeals is sustained,[12] and its judgment denying the motion to dismiss the appeal for lack of appellate jurisdiction is

*Affirmed.*

---

[10] See *Collins* v. *Metro-Goldwyn Pictures Corp.*, 106 F. 2d 83 (C. A. 2d Cir.), cited in *Reeves* v. *Beardall*, 316 U. S. 283.

[11] See *Cobbledick* v. *United States*, 309 U. S. 323.

[12] Mackey also argues that the Court of Appeals has jurisdiction under 28 U. S. C. § 1292 (1). In view of our disposition of this case, we do not reach that contention.

MR. JUSTICE FRANKFURTER, whom MR. JUSTICE HARLAN joins, concurring in No. 34 and dissenting in No. 76.

The result in these two litigations of course has significance for the parties. That is, however, of relative insignificance compared to the directions which judges in the district courts and courts of appeals will draw from the Court's opinions. For me, what is said has not a little kinship with the pronouncements of the Delphic oracle.

The opinion in *Cold Metal Process Co.* v. *United Engineering & Foundry Co., post,* p. 445, declares that 28 U. S. C. § 1291 remains unimpaired, but surely that section does not remain what it was before these opinions were written. Rule 54 (b) is apparently the transforming cause. The Court could have said that Rule 54 (b), promulgated under congressional authority and having the force of statute, has qualified 28 U. S. C. § 1291. It does not say so. The Court could have said that it rejects the reasoning of the decisions in which this Court for over a century has interpreted § 1291 as expressing a hostility toward piecemeal appeals. It does not say so. The Court could have said that Rule 54 (b)'s requirement of a certificate from a district judge means that the district judges alone determine the content of finality. The Court does not say that either.

The Court does indicate that what has been the core of the doctrine of finality as applied to multiple claims litigation—that only that part of a litigation which is separate from, and independent of, the remainder of the litigation can be appealed before the completion of the entire litigation—is no longer to be applied as a standard, or at least as an exclusive standard, for deciding what is final for purposes of § 1291. The Court does not, however, indicate what standards the district courts and the courts of appeals are now to apply in determining when a decision is final. It leaves this problem in the first

instance to the district courts, subject to review by the courts of appeals for an abuse of discretion. In other instances where a district court's ruling can be upset only for an abuse of its discretion, the scope of review is necessarily narrow. Here, in regard to the present problem, what is to come under review is a newly modified requirement of finality. But the requirement continues to be based upon a statute, *viz.*, 28 U. S. C. § 1291, and that statute defines and constricts the jurisdiction of the courts of appeals. Therefore the issue of compliance with this congressional command would, I should suppose, cast upon the courts of appeals a duty of independent judgment broader than is implied by the usual flavor of the phrase "abuse of discretion."

For me, the propositions emerging from analysis of the relationship of Rule 54 (b) to 28 U. S. C. § 1291 are clear.

1. 28 U. S. C. § 1291 is left intact by Rule 54 (b). It could not be otherwise with due regard for the congressional policy embodied in that section and in view of what the Advisory Committee on the Rules said in its Note to amended Rule 54 (b):

> "The historic rule in the federal courts has always prohibited piecemeal disposal of litigation and permitted appeals only from final judgments except in those special instances covered by statute. . . . Rule 54 (b) was originally adopted in view of the wide scope and possible content of the newly created 'civil action' in order to avoid the possible injustice of a delay in judgment of a distinctly separate claim to await adjudication of the entire case. It was not designed to overturn the settled federal rule stated above . . . .
>
> .        .        .        .        .
>
> ". . . After extended consideration, it [the Committee] concluded that a retention of the older fed-

eral rule was desirable, and that this rule needed only the exercise of a discretionary power to afford a remedy in the infrequent harsh case to provide a simple, definite, workable rule. This is afforded by amended Rule 54 (b). It re-establishes an ancient policy with clarity and precision. . . ." Report of Advisory Committee on Proposed Amendments to Rules of Civil Procedure 70–72.

2. 28 U. S. C. § 1291 is not a technical rule in a game. It expresses not only a deeply rooted but a wisely sanctioned principle against piecemeal appeals governing litigation in the federal courts. See *Cobbledick* v. *United States,* 309 U. S. 323; *Radio Station WOW* v. *Johnson,* 326 U. S. 120, 123–127. The great importance of this characteristic feature of the federal judicial system—its importance in administering justice—is made luminously manifest by considering the evils where, as in New York, piecemeal reviews are allowed.

3. While the principle against piecemeal appeals has been compendiously and therefore, at times, loosely phrased as implying that the whole of a litigation, no matter what its nature, must be completed before any appeal is allowed, see *Collins* v. *Miller,* 252 U. S. 364, 370, the underlying rationale of the principle has been respected when not susceptible of this mechanical way of putting it. What have been called exceptions are not exceptions at all in the sense of inroads on the principle. They have not qualified the core, that is, that there should be no premature, intermediate appeal.

Thus the Court has permitted appeal before completion of the whole litigation when failure to do so would preclude any effective review or would result in irreparable injury. See *Forgay* v. *Conrad,* 6 How. 201; *Cohen* v. *Beneficial Loan Corp.,* 337 U. S. 541, 545–547; *Swift & Co.* v. *Compania Caribe,* 339 U. S. 684, 688–689. A

second situation in which the Court has found that an appeal before termination of the entire litigation did not conflict with the congressional policy against piecemeal appeals is that in which a party to the completed portion of the litigation has no interest in the rest of the proceedings and to make him await their outcome would merely cause unfairness. See *Williams* v. *Morgan,* 111 U. S. 684, 699; *United States* v. *River Rouge Co.,* 269 U. S. 411, 413–414.

4. The expansion by the Federal Rules of the allowable content of a proceeding and the range of a litigation inevitably enlarged the occasions for severing one aspect or portion of a litigation from what remains under the traditional test of a "final decision." On the basis of prior cases, we held that it was not a departure from the policy against piecemeal appeals to permit an appeal with respect to that part of a multiple claims litigation based on a set of facts separate and independent from the facts on which the remainder of the litigation was based. *Reeves* v. *Beardall,* 316 U. S. 283. The Note of the Advisory Committee, quoted *supra,* demonstrates that the amended Rule 54 (b) was designed in accordance with the historic policy against premature appeal and with the decisions of this Court allowing appeal from a "judgment of a distinctly separate claim." What the Rule did introduce, however, was a discretionary power in the district judge to control appealability by preventing a party from even attempting to appeal a severable part of a litigation unless the district judge has expressly certified that there is no just reason for delay and has expressly directed entry of judgment on that phase of the litigation. This provision was directed to the kind of difficulty encountered in *Dickinson* v. *Petroleum Conversion Corp.,* 338 U. S. 507, in ascertaining whether the district judge is in fact finished with a separable part of the litigation.

The Court casually disregards this long history of § 1291 and the bearing of Rule 54 (b) to it by rejecting the separate-and-independent test as the basis for determining the finality of a part of a multiple claims litigation. The Court says that its decision "does not impair the statutory concept of finality embraced in § 1291." The Court may not do so in words, for it pays lip-service to § 1291. But that section's function as a brake against piecemeal appeals in future multiple claims litigation is greatly impaired. Encouragement is abundantly given to parties to seek such appeals.

The principles which this Court has heretofore enunciated over a long course of decisions under § 1291 furnish ready guides for deciding the appealability of the certified parts of the litigation in the two cases now before the Court. Count II in *Sears, Roebuck & Co.* v. *Mackey, ante,* p. 427, is appealable since the transactions and occurrences involved in it do not involve any of those embraced in Counts III and IV. Count I involves at least two transactions which are also the subject matter of Counts III and IV, but is appealable under § 1292 (1) as an interlocutory order denying an injunction. In *Cold Metal Process Co.* v. *United Engineering & Foundry Co., post,* p. 445, the counterclaim, even if not compulsory, is based in substantial part on the transactions involved in the main litigation and hence not appealable.

5. Of course, as the Court's opinion appears to recognize, that crucial principle of the doctrine of finality that the court of appeals has no jurisdiction unless there is a "final decision" cannot be left to the district court. It is one thing for a district court to determine whether it is or is not through with a portion of a litigation. It is quite another thing for it to determine whether the requirements of § 1291 are satisfied so as to give jurisdiction to the court of appeals. A district court can no more confer

444

jurisdiction on a court of appeals outside the limits of 28 U. S. C. § 1291 than a state supreme court can confer jurisdiction on this Court beyond the bounds of 28 U. S. C. § 1257. In a particular litigation the opinion of the district judge may properly be deemed a valuable guide. But flexibility would be a strange name for authority in the district court to command the court of appeals to exercise jurisdiction.

6. In summary, then, the Court rightly states, even if it does not hold, that § 1291 is unimpaired by Rule 54 (b). Section 1291 is what a long course of decision has construed it to be. The unifying principle of decisions for over a century is observance of hostility in the federal judicial system to piecemeal appellate review (with a few strictly defined exceptions not here relevant, see 28 U. S. C. § 1292) of one litigation, no matter how many phases or parts there may be to a single judicial proceeding, so long as no part has become separated from, and independent of, the others. This rooted principle against piecemeal appeals of an organic whole—the core of § 1291—is not left unimpaired when its enforcement is committed without guidance to the individualized notions about finality of some two hundred and fifty district judges, themselves accountable to the discordant views of eleven essentially independent courts of appeals. Allowing such leeway to the district courts and courts of appeals is not flexibility but anarchy.