**STAUFFER CHEMICAL COMPANY, a corporation of the State of Delaware, Plaintiff,**

v.

**KEYSOR–CENTURY CORPORATION, a corporation of the State of California, Defendant.**

Civ. A. No. 81–133.

United States District Court, D. Delaware.

May 12, 1982.

On Motion for Prejudgment Interest June 9, 1982.

Januar D. Bove, Jr., and Lester J. Taufen, of Connolly, Bove & Lodge, Wilmington, Del., for plaintiff.

E. Norman Veasey, Allen M. Terrell, Jr., and David B. Stratton, of Richards, Layton & Finger, Wilmington, Del., for defendant.

*Opinion Granting Plaintiff's Motion for Partial Summary Judgment Directing Entry of a Final Judgment and Certification Under Rule 54(b), and Denying Defendant's Motion for a Stay*

STEEL, Senior District Judge:

Plaintiff has moved for partial summary judgment of $408,172.03 and in its brief asks for certification under Rule 54(b). The parties have agreed that this is the balance due plaintiff under a "running account" between the parties after credits and adjustments favorable to the defendant, agreed upon by plaintiff, are reflected in the account. The question is whether the relief sought by plaintiff should be granted under the rationale of *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980). Defendant resists the motion upon the ground that de-

fendant has filed counterclaims against plaintiff for $434,000, and that both the claim and the counterclaims "arise from the same running account." (Defendant's Ans.Br. at 4, Doc. 61). The counterclaims have not been decided and trial has not been sought as yet.

For the most part, the amount claimed by plaintiff is for goods and services which plaintiff provided the defendant under a contract for the calendar year 1979 in the amount of $370,255.64. The balance of the claim is for utility bills, rental bills, paper bags, and physical examinations for Keysor's employees which were goods and services provided by plaintiff to Keysor between June 22, 1979 and November 20, 1979. Defendant does not dispute that it received these goods and services and that the judgment which plaintiff seeks should be granted were it not for the counterclaims.

The counterclaims of the defendant are based upon a Processing Agreement between the parties which expired by its terms on December 31, 1978. (Cunningham Aff., ¶ 2, Doc. 30). The counterclaims allege that plaintiff breached the Processing Agreement by failing to give defendant the benefit of plaintiff's processing efficiencies over 90% and to give Keysor a credit for the off-grade and scrap copolymer resin that did not meet the quality specification requirements of the Processing Agreement.

■ The significance of counterclaims for Rule 54(b) purposes "turns on their interrelationship with the claims for which certification is sought." 446 U.S. at 9, 100 S.Ct. at 1465. Here, no possible relationship exists between the claim and counterclaims. The claim and counterclaims arise under separate and distinct contracts. They are based upon circumstances totally different. They occurred during different periods of time. The undisputed amount presently due plaintiff under its claim bears no relationship, factually or legally, to the disputed claims, non-frivolous though they

be, which the counterclaims allege.* Certification would not result in unnecessary appellate review. Any review of the claims asserted by plaintiff, which are agreed upon but for defendant's argument that they arose out of a "running account", would not be mooted by any further developments in the case. Nor would an appeal caused by certification require the appellate court to decide the same issues if there were later appeals. As stated, the amount of the claim of plaintiff is not disputed. The only purpose of the certification is for plaintiff to obtain a final judgment which has been subject to appellate review so that plaintiff can be paid promptly. The "historic federal policy against piecemeal appeals" referred to in *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 438, 76 S.Ct. 895, 901, 100 L.Ed. 1297 (1956) is entitled to relatively little weight where, as here, the appellate court will not be faced with a judgment based upon a disputed claim.

A decision for the plaintiff on the motion will be a final judgment, subject only to appellate review. In the *Curtiss-Wright* case the Court said:

> Once having found finality, the district court must go on to determine whether there is any just reason for delay....
>
> ... in deciding whether there are no just reasons to delay the appeal of individual final judgments in a setting such as this, a district court must take into account judicial administrative interests as well as the equities involved. Consideration of the former is necessary to assure that application of the Rule effectively 'preserves the historic federal policy against piecemeal appeals.' *Id.* [351 U.S.] at 438 [, 76 S.Ct. at 901]. It was therefore proper for the District Judge here to consider such factors as whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide

the same issues more than once even if there were subsequent appeals.

Here the District Judge saw no sound reason to delay appellate resolution of the undisputed claims already adjudicated. The contrary conclusion of the Court of Appeals was strongly influenced by the existence of nonfrivolous counterclaims. The mere presence of such claims, however, does not render a Rule 54(b) certification inappropriate. If it did, Rule 54(b) would lose much of its utility. In *Cold Metal Process Co. v. United Engineering & Foundry Co.*, 351 U.S. 445 [, 76 S.Ct. 904, 100 L.Ed. 1311] (1956), this Court explained that counterclaims, whether compulsory or permissive, present no special problems for rule 54(b) determinations; counterclaims are not to be evaluated differently from other claims. 351 U.S. at 452 [, 76 S.Ct. at 908]. Like other claims, their significance for Rule 54(b) purposes turns on their interrelationship with the claims on which certification is sought. Here, the District Judge determined that General Electric's counterclaims were severable from the claims which had been determined in terms of both the factual and the legal issues involved.

446 U.S. at 8–9, 100 S.Ct. at 1465.

The same reasons which prompted the Supreme Court to hold that the interests of judicial administration favored certification exist in the present case, provided that the equities warrant it.

One of the equities which the District Court considered in *Curtiss-Wright* was the difference between the statutory and market rates of interest. *Id.* at 11, 100 S.Ct. at 1466. It found that Curtiss-Wright would suffer severe daily financial loss from nonpayment of the $19 million judgment because current interest rates were higher than the statutory pre-judgment rate, a situation compounded by the large amount of money involved. *Id.* at 6, 100 S.Ct. at 1464. The question before the District Court thus

---

* The Court has already denied plaintiff's motion for summary judgment on the counterclaims.

See opinion dated March 30, 1982. (Doc. 49).

came down to which of the parties should get the benefit of the difference between the pre-judgment and market rates of interest on debts admittedly owing and adjudged to be due while unrelated claims are litigated. The Supreme Court said:

> The question before the District Court thus came down to which of the parties should get the benefit of the difference between the prejudgment and market rates of interest on debts admittedly owing and adjudged to be due while unrelated claims were litigated.

*Id.* at 11, 100 S.Ct. at 1466.

This Court is presented with the same question as to the significance of difference in interest rates. The Court can take judicial notice of the fact that since the time when the amount which the defendant was obligated to pay plaintiff became due the market interest rates are higher than the pre-judgment rate allowed in Delaware.** Here, as in *Curtiss-Wright*, each party is financially able to satisfy any judgment which may be entered against it. In *Curtiss-Wright* the Supreme Court said:

> If the judgment is otherwise certifiable, the fact that a litigant who has successfully reduced his claim to judgment stands to lose money because of the difference in interest rates is surely not a 'just reason for delay.'

In weighing the equities the Supreme Court also pointed out that the District Court had found that in the absence of certification the amounts due the plaintiff would not be paid for "many months, if not years" because the rest of the litigation could be expected to continue for that time. *Id.* at 11, 100 S.Ct. at 1466. The present record will not support such an explicit finding. Nevertheless, the factual complexity of the counterclaims, including its technical aspects, provide reasonable assurance that they cannot be disposed of on the merits in the early future. A motion is pending by plaintiff to dismiss the defend-

ant's counterclaims on the ground that the defendant was not qualified to do business in Delaware at the time when the counterclaims were filed. (Doc. 32). The briefing on this motion will not be concluded until May 13. Furthermore, the cut off date for discovery will not expire until October 14, 1982. (Doc. 54).

The Supreme Court concluded, "We are satisfied, . . . that on the record here the District Court's assessment of the equities was reasonable." *Id.* at 11, 100 S.Ct. at 1466. An assessment of the equities by this Court similar to that approved by the Supreme Court in *Curtiss-Wright* is justifiably favorable to plaintiff.

The defendant points out that one of its counterclaims is based upon a fraud charge against plaintiff and argues that this bears heavily upon the lack of equity in plaintiff's application for certification. This charge of fraud has not been proven and hence warrants no consideration at this juncture in the case.

Since plaintiff's claim of $408,172.03 is undisputed the motion of plaintiff for summary judgment in that amount should be granted. The Court also finds a sufficient similarity between the *Curtiss-Wright* case and the instant one for the Court to expressly determine that there is no just reason for delay in certifying the judgment under Rule 54(b), and to direct the entry of final judgment in the amount of $408,172.03 in favor of plaintiff against the defendant.

Finally, defendant in its brief asks that plaintiff's "claim" should be stayed until the defendant's counterclaims are determined. Defendant has advanced no satisfactory reason why a stay should be granted and the request for a stay will be denied.

### On Motion for Prejudgment Interest

On May 12, 1982, the Court entered an order which granted plaintiff's motion for

---

** Prior to April 18, 1980, the legal rate of interest remained as it was at that time. This was the traditional 6% rate. *Rollins Environmental, etc. v. WSMW Industries,* 426 A.2d 1363, 1366 (Super.Del.1980). After April 18, 1980, in the absence of an express contract rate, the legal rate of interest shall be 5% over the Federal Reserve Discount rate including any surcharge as of the time from which interest is due.

partial summary judgment against the defendant in the amount of $408,172.03. On May 14, 1982, plaintiff wrote asking the Court to amend the judgment to include $76,944.97 as prejudgment interest in addition to the principal amount of the claim of $408,172.03, for a total of $485,177.00.

The judgment of May 12, 1982, is made up of two types of claims, one under the 1979 contract and the other of non-contractual claims. The noncontractual claims are for utilities, rent, physical examinations and paper bags, and total $64,160.89. By letter dated May 25, 1982, the defendant agrees with plaintiff that the Delaware 6% interest rate is applicable to the noncontractual claims and it does not dispute plaintiff's computation of prejudgment interest of $9,442.34 on the noncontractual claims. The total amount of the judgment in the May 12, 1982 order is $408,172.03. When this is reduced by the principal amount of the noncontractual claims which total $64,-160.89, the resulting balance of $344,011.14 represents the principal amount of the judgment for the contractual claims under the 1979 contract. The parties are in disagreement as to the amount of prejudgment interest which should be allowed upon this amount. Plaintiff claims that the prejudgment interest should be computed at 8% under Connecticut law whereas defendant argues that prejudgment interest should be restricted to 6% under Delaware law. The plaintiff's claim is based upon ¶ 14 of the 1979 contract which provides:

14. The Buyer and Seller agree that this contract shall be deemed to have been made and executed in the State of Connecticut and that any dispute arising under this contract shall be resolved in accordance with the laws of the State of Connecticut.

General Statutes of Connecticut, Title 37, § 37–3A provides that interest at the rate of 8% per annum may be recovered and allowed in civil actions. On the other hand, the defendant argues that 6 Del.C. § 2301(a) provides that the legal rate, 6%, shall apply where the time from which interest is due, as here, predates April 18, 1980, and, as here, there is no express rate fixed in the contract, *citing Rollins Environmental Services, Inc. v. WSMW Industries, Inc.*, Del.Super., 426 A.2d 1363, 1367–68 (1980).

The choice of law controversy in this diversity case requires this Court to apply Delaware choice of law rules, *Klaxton Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). No Delaware case provides a direct answer to whether a contract containing a provision such as ¶ 14 requires a Court to look to the law of the forum or to that of the foreign state to determine the rate of prejudgment interest. Paragraph 14 provides broadly, however, that "any dispute arising under the contract shall be resolved" under Connecticut law.

Section 187(1) of the *Restatement (Second) of Conflicts of Laws* states:

(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

The particular issue here is the rate to be applied to prejudgment interest. This choice of law issue is clearly one that the parties could have resolved if the subject had been explicitly covered by the contract rather than more generally by the phrase "any dispute arising under the contract" as was the case.

Furthermore, Section 207 of the Restatement provides:

The measure for a breach of contract is determined by the local law of the state selected by application of the rules of §§ 187–188.*

Comment e. to Section 207 provides:

e. *Interest.* The local law of the state selected by application of the rule of this Section determines whether plaintiff can recover interest, and, if so, the rate, upon damages awarded him for the period between the breach of contract and the

---

* Section 188 is of no concern since the problem here is directly covered by Section 187.

rendition of judgment. This law also determines the validity of an express contractual provision for the payment of a stipulated rate of interest.

Sections 187 and 207 were the basis for the decision in the unreported case of *Curtiss-Wright Corporation v. General Electric Company*, C.A.No.76–794, filed by the District Court of New Jersey on June 20, 1978. There, where the parties had stipulated in their contract that New York law should govern "in all respects", the Court held that the rate of prejudgment interest should be determined under New York law. Judge Coolahan said:

> The contracts between the parties contain provisions electing New York law as governing 'in all respects.' As explained in the opinion of December 5, 1977, there is no reason why the parties' choice in this regard should not be honored. In this context, the issue of prejudgment interest is necessarily an element of the measure of damages to be awarded for breach of contract. Under generally accepted conflict-of-laws principles, issues as to the measure of damages and prejudgment interest are governed by the local law of the State whose law has been selected for other purposes by the parties in a choice-of-law clause. *Restatement (Second), Conflict of Laws* §§ 187, 207 (1971). Thus, New York law will govern as to plaintiff's entitlement to prejudgment interest.

If the choice-of-law question were presented to a Delaware state court, it is presumed that it would follow the sections of the Restatement which have been cited and, also the persuasive opinion of Judge Coolahan in the *Curtiss-Wright* case. Accordingly, the Court will compute the prejudgment interest at the Connecticut rate of 8% on $344,011.14, the principal judgment on the contractual claims. This amounts to $67,502.63. When this figure is added to the prejudgment interest of $9,442.34, on the noncontractual claims the total prejudgment interests comes to $76,944.97. Adding this figure to the principal amount of the judgment of $408,172.03, a total figure of $485,117.00 is arrived at. The order of May 12, 1982, should, therefore, be amended so that the figures of $408,172.03 in paragraphs 1 and 2 of that order are changed to the figure of $485,117.00.