Joseph GIORDANO, Plaintiff
Below, Appellant,

v.

Albert MARTA, Lauren M. Demichiel,
Sheffield Development Corporation, and
Degior Builders, Inc., Defendants Below,
Appellees.

No. 277, 1998.

Supreme Court of Delaware.

Submitted: Oct. 2, 1998.
Decided: Oct. 22, 1998.

Paul A. Bucco and Robert D. Ardizzi,
Davis & Bucco, P.C., Blue Bell, PA, for appellant.

Jeffrey M. Weiner, Wilmington, for appellees.

Before WALSH, HOLLAND and
HARTNETT, JJ.

HOLLAND, Justice:

The defendants-appellees, Albert Marta,
Lauren M. DeMichiel, Sheffield Development
Corporation, and Degior Builders, Inc., filed
a motion to dismiss this appeal on the ground
that the plaintiff-appellant, Joseph Giordano,
failed to file his notice of appeal in a timely
manner. The record reflects that the appellant, seeking review of a May 22, 1998 final
judgment of the Court of Chancery ("the
May 22 Judgment"), filed his notice of appeal
with this Court on June 23, 1998. The appellees' argue that, pursuant to Supreme Court
Rule 6(a) and 10 *Del.C.* § 145, appellant's

notice of appeal should have been filed on or before June 22, 1998.

The appellant filed a response to the motion to dismiss and contended that neither he nor his attorney received a copy of the May 22 Judgment until June 23, 1998. The appellant asserts that he had no knowledge that the May 22 Judgment was entered or that the appeal period had commenced until the attorney for the appellees faxed a copy of the order to appellant's attorney on June 23, 1998. Consequently, the appellant contends that the jurisdictional defect created by his untimely notice of appeal should be excused by this Court because of circumstances which are not attributable to appellant or his attorney, i.e., failure of the Court of Chancery personnel to provide notification of the entry of the May 22 Judgment. *See Riggs v. Riggs,* Del.Supr., 539 A.2d 163, 164 (1988).

■ This Court lacks jurisdiction to consider an appeal when the notice of appeal is not filed in a timely manner *unless* the appellant can demonstrate that the failure to file a timely notice of appeal is attributable to court-related personnel. *Bey v. State,* Del. Supr., 402 A.2d 362, 363 (1979). *See also Riggs v. Riggs,* Del.Supr., 539 A.2d 163, 164 (1988); *Carr v. State,* Del .Supr., 554 A.2d 778, 779 (1989); 10 *Del.C.* § 145. This Court determined that the appellant's contentions created a factual issue regarding whether Court of Chancery personnel actually caused the delay in the filing of appellant's notice of appeal by failing to provide appellant with a copy of the May 22 Judgment in a timely fashion. This Court remanded the case to the Court of Chancery for the purpose of determining whether the untimeliness of appellant's notice of appeal is attributable to court-related personnel.

### Remand Proceedings

Following this Court's remand, the parties have submitted affidavits and documentary evidence to the Court of Chancery which reflect no dispute about the course of events leading up to the entry of the May 22 Judgment. The Court of Chancery's opinion granting the appellees' motion for summary judgment was issued on April 27, 1998. In that opinion, the parties' attorneys were instructed to submit an agreed upon order or alternative forms of order within ten days. On May 4, 1998, the appellees' attorney sent the first draft of the order to appellant's attorney by facsimile for approval. On May 7, 1998, the appellant's attorney responded by facsimile, noting that the proposed order did not preserve the plaintiff's unresolved separate contract claim.[1]

On May 8, 1998, appellees' attorney sent the second draft of the proposed order by facsimile to the appellant's attorney. On the same date, by facsimile, appellant's attorney informed appellees' attorney that the second draft of the proposed order was acceptable. The appellees' attorney then informed the Court of Chancery that the final proposed order was being circulated for execution. The appellant's attorney was copied on that letter.

On May 17, 1998, the appellees' attorney sent a facsimile to the appellant's attorney requesting the return of the executed order or a copy of the correspondence forwarding the order to the Court of Chancery. On May 18, 1998, instead of sending the executed order directly to the Court of Chancery himself, the appellant's attorney forwarded the executed order to the appellees' attorney. On May 20, 1998, the appellees' attorney forwarded the fully executed order to the Court of Chancery. It is important to note that the appellant's attorney was copied on and actually received that letter of transmittal. The Rule 54(b) order of final judgment was signed by the Court of Chancery and docketed on May 22, 1998.

The May 22 Judgment was received by the attorney for the appellees within a few days of its entry. According to the affidavit of the appellant's attorney, he first learned of its entry on June 23, 1998, in a communication from the appellees' attorney. Apparently, the attorney for the appellant did not take any steps to learn whether the Rule 54(b)

---

1. The Court of Chancery did not address that separate claim in deciding the summary judg-ment motion.

final judgment had been entered, at any time between his receipt of the May 20 letter forwarding the agreed upon form of order to the Court of Chancery and June 23. There is no suggestion in the affidavit by the appellant's attorney that any "action" (as opposed to "inaction") on the part of any person connected with the Court of Chancery caused or occasioned the failure to file a timely notice of appeal with this Court.

On remand, the Court of Chancery assumed that its court personnel did not furnish the appellants' attorney with notice of or a copy of the May 22 Judgment. The Court of Chancery then proceeded to determine whether, taking into account all of the surrounding circumstances, that failure on the part of court personnel was the legally cognizable cause of the appellant's untimely filing of the notice of appeal. The Court of Chancery then held:

> Viewing all of the circumstances, I am unable to conclude that the presumed failure of the [Court of Chancery's] personnel to notify plaintiff's counsel of the entry of the May 22 [Judgment] "actually caused the delay in the filing of the appellant's notice of appeal." This is not a case where counsel was misled by court personnel, as in *Riggs. See* 539 A.2d at 164. Nor is it a case where the appellant "did all that was required of him" as in *Bey. See* 402 A.2d at 363. Rather, plaintiff's counsel signed the agreed upon form of order and had actual notice of its submission to the Court for approval and entry on the docket. Their failure to make inquiry into the status of that order at any time after May 20, 1998, is, in my view, a sufficient cause of the untimely filing of the notice of appeal.

### Final Judgment
### Chancery Rule 54(b)

The final judgment of the Court of Chancery, that is on appeal in this case, was entered pursuant to Rule 54(b). *Court of Chancery Rule 54(b)* is patterned after and almost identical to its counterpart in the Federal Rules of Civil Procedure. The background of the Federal Rule is important. Historically, most litigation involved only two parties and/or one theory of recovery.

Therefore, all cases were considered to be one judicial unit and, as such, indivisible entities.

The Federal Rules of Civil Procedure provided for the liberal joinder of multiple claims, often involving multiple parties, and caused a "need for relaxing the restrictions upon what should be treated as a judicial unit for purposes of appellate jurisdiction." *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 432, 76 S.Ct. 895, 100 L.Ed. 1297 (1956). The origin and evolution of Federal Rule of Civil Procedure 54(b) have been summarized by the United States Supreme Court, as follows:

> Sound judicial administration did not require relaxation of the standard of finality in the disposition of the individual adjudicated claims for the purpose of their appealability. It did, however, demonstrate that, at least in multiple claims actions, some final decisions, on less than all of the claims, should be appealable without waiting for a final decision on *all* of the claims. Largely to meet this need, in 1939, Rule 54(b) was promulgated in its original form...
>
> Thus, original Rule 54(b) modified the single judicial unit theory but left unimpaired the statutory concept of finality.... However, it was soon found to be inherently difficult to determine by any automatic standard of unity which of several multiple claims were sufficiently separable from their appealability. The result was that the jurisdictional time for taking an appeal from a final decision on less than all of the claims in a multiple claims action in some instances expired earlier than was foreseen by the losing party. It thus became prudent to take immediate appeals in all cases of doubtful appealability and the volume of appellate proceedings was undesirably increased.
>
> Largely to overcome this difficulty, Rule 54(b) was amended, in 1946, to take effect in 1948. Since then it has read as follows:
>
> > (b) Judgment Upon Multiple Claims. *When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, the court may direct*

*the entry of a final judgment upon one or more but less than all of the claims only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.* In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all the claims shall not terminate the action as to any of the claims, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims. (Emphasis supplied).

In this form, it does not relax the finality required of each decision, as an individual claim, to render it appealable, but it does provide a practical means of permitting an appeal to be taken from one or more final decisions on individual claims, in multiple claims actions, without waiting for final decisions to be rendered on *all* the claims in the case. . . .

To meet the demonstrated need for flexibility, the [trial court] is used as a "dispatcher." It is permitted to determine, in the first instance, the appropriate *time when each "final decision"* upon "one or more but less than all" of the claims in a multiple claims action is ready for appeal. This arrangement already has lent welcome certainty to the appellate procedure. Its "negative effect" has met with uniform approval. The effect so referred to is the rule's specific requirement that for "one or more but less than all" multiple claims to become appealable, the [trial court] must make both "an express determination that there is no just reason for delay" and "an express direction for the entry of judgment." A party adversely affected by a final decision thus knows that his time for appeal will *not* run against him until this certification has been made.

*Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 432–36, 76 S.Ct. 895, 100 L.Ed. 1297 (1956).

In this case, the appellant could have waited to appeal the adverse summary judgment ruling by the Court of Chancery until a final judgment had been entered on *all* claims.

Instead, the appellant asked the Court of Chancery "to make an express determination that there was no just reason for delay" and to make the further "express determination to enter its summary judgment pursuant to Court of Chancery Rule 54(b)." As the party adversely affected by the summary judgment decision, the appellant was on notice that the time for appeal would begin to run as soon as the Court of Chancery's Rule 54(b) final judgment was docketed. The appellant's attorney had notice that the order approved by all attorneys had been transmitted to the Court of Chancery on May 20, 1998.

### Notification of Judgment
### Court of Chancery Rules

The Court of Chancery Rules and the Superior Court Civil Rules are patterned after the Federal Rules of Civil Procedure. The Court of Chancery Rules are not identical, however, to either the Federal Rules of Civil Procedure or the Superior Court Civil Rules. One difference that is significant for this case is a comparison of Rule 77(d) in these three sets of rules.

Superior Court Rule 77(d), which is very similar to its counterpart in the Federal Rules of Civil Procedure, provides:

Immediately upon the entry of an order of judgment, the Prothonotary shall serve a notice of the entry by mail in the manner provided for in Rule 5 upon each party who is not in default for failure to appear, and shall make a note in the docket of the mailing. Such mailing is sufficient notice for all purposes for which notice of the entry of an order is required by these Rules; but any party may in addition serve a notice of such entry in the manner provided in Rule 5 for the service of papers. Lack of notice of the entry by the Prothonotary does not affect the time to appeal or relieve or authorize the Court to relieve a party for failure to appeal within the time allowed.

The Court of Chancery Rules contain no similar provision. In fact, Court of Chancery Rule 77(d) simply reads "Omitted." Nevertheless, on remand, the Court of Chancery noted that the routine practice of its personnel is to mail judgments to the parties.

Although Superior Court Rule 77(d) and Federal Rule of Civil Procedure 77(d) expressly impose the duty of notification on the court clerk, Superior Court Rule 77(d) also provides that lack of notice does not affect the time for appeal or permit relief for failure to file a timely appeal. When the Federal Rules contained similar language several years ago, the clerk's failure to mail a notice of judgment to the attorney for a party did not constitute excusable neglect for filing an untimely appeal. *See Bortugno v. Metro–North Commuter Railroad,* 905 F.2d 674, 676 (2d Cir.1990).

Federal Rule of Civil Procedure 77(d) now reads: "Lack of notice of the entry by the clerk does not affect the time to appeal or receive or authorize the court to relieve a party for failure to appeal within the time allowed, *except as permitted in Rule 4(a).*" The Advisory Committee Note to 1991 amendment of Fed.R.Civ .P. 77(d) states:

> The purpose of the revisions is to permit district courts to ease strict sanctions now imposed on appellants whose notices of appeal are filed late because of their failure to receive notice of entry of a judgment.

Federal Rule of Civil Procedure 4(a)(6) was also amended in 1991 and now reads as follows:

> The district court, if it finds (a) that a party entitled to notice of the entry of a judgment or order did not receive such notice from the clerk or any party within 21 days of its entry and (b) that no party would be prejudiced, may, upon motion filed within 180 days of entry of the judgment or order or within 7 days of receipt of such notice, whichever is earlier, reopen the time for appeal for a period of 14 days from the date of entry of the order reopening the time for appeal.

The Note of the Advisory Committee that accompanied the 1991 amendment to Federal Rule of Civil Procedure 4(a)(6) states:

> The amendment provides a limited opportunity for relief in circumstances where the notice of entry of a judgment or order, required to be mailed by the clerk of the district court pursuant to Rule 77(d) of the Federal Rules of Civil Procedure, is either not received by a party or is received so late as to impair the opportunity to file a timely notice of appeal.

These 1991 amendments to the Federal Rules of Civil Procedure 4(a)(6) and 77(d) have not been adopted by either the Superior Court or the Court of Chancery.

Twenty-five years ago this Court urged the Superior Court to review "the last sentence of its Rule 77(d) (providing that the Prothonotary's failure to notify the parties of the entry of an order or judgment does not affect appeal time) in light of practicality and modern views of procedural due process." *Storey v. Castner,* Del.Supr., 306 A.2d 732, 734 n. 2 (1973). We now urge the Court of Chancery and the Superior Court to consider the merits of Federal Rules of Civil Procedure 77(d) and 4(a)(6) as now written. If the Court of Chancery had adopted the current versions of Federal Rules of Civil Procedure 77(d) and 4(a)(6), the appellant would be entitled to relief. In the absence of such provisions, relief is not available because the appellant's attorney failed to file a timely notice of appeal with this Court. *See Avolio v. County of Suffolk,* 29 F.3d 50 (2d Cir. 1994).

### Conclusion

 "The power of an appellate court to exercise jurisdiction rests upon the perfecting of an appeal within the time fixed by statute." *PNC Bank, Delaware v. Hudson,* Del.Supr., 687 A.2d 915, 916 (1997). By copy of the appellees' correspondence, the appellant's attorney knew that the fully executed order had been transmitted to the Court of Chancery on May 20. When a party fails to perfect a timely appeal, "a jurisdictional defect is created which may not be excused in the absence of unusual circumstances which are not attributable to the appellant or the appellant's attorney." *Riggs v. Riggs,* Del. Supr., 539 A.2d 163, 164 (1988). The untimely filing of the appeal in this case is not attributable to Court of Chancery personnel because the appellant had a continuing duty

of inquiry to ascertain if the final judgment had been docketed, after he expressly asked the Court of Chancery to commence the time to appeal by entering a final judgment pursuant to Rule 54(b) and knew that the executed order had been forwarded to the Vice–Chancellor. Accordingly, this appeal is dismissed.