17439

The MULLINS HOSPITAL, Appellant, v. J. Tom SQUIRES, Adm'r. Respondent
(104 S. E. (2d) 161)

188

*Messrs. W. B. Hawkins,* of Dillon, and *Woods & Woods,* of Marion, *for Appellant,*

*Messrs. Willcox, Hardee, Houck & Palmer,* of Florence, and *Dexter R. Hamilton,* of Myrtle Beach, *for Respondent,*

June 11, 1958.

LEGGE, Justice.

Victoria Squires was a patient in the Mullins Hospital from March 22, 1955 through December 4, 1956. On December 15, 1956, the hospital commenced an action against her in the Court of Common Pleas for Dillon County for its charges, in the amount of $6,751.00, attaching to the complaint an itemized and verified statement thereof. In its first paragraph, the complaint alleged that "The Mullins Hospital, the above named plaintiff, created and established pursuant to the authority of an act of the General Assembly of South Carolina, approved March 26, 1923 (33 Stat. at Large, 758), and amendments thereto, including an act approved May 14, 1955 (49 Stat. at Large, 1214), is and was at the times herein stated a political subdivision of Marion County, South Carolina, engaged in the operation of a public hospital for the benefit of the public health and benevolent and charitable purposes, its property being held and operated for said purposes by a commission charged with its direction and management". On December 20, 1956, Victoria Squires died; and by proper order the action was continued against the administrator of her estate. He answered, alleging that he was without information sufficient to form a belief as to the allegations of the first paragraph of the complaint, and denying the alleged indebtedness. By way of affirmative defense, he alleged: that Victoria Squires, a deaf mute, had, in some manner unknown to the defendant, sustained a fracture of the hip about the time of her entry into the hospital on March 22, 1955, for a routine physical examination that should have required her to remain there only a day or two; "that the plaintiff, its agents, servants, employees or nurses failed or neglected to discover that the said Vic-

toria Squires had sustained this injury, and provided no care and no treatment which would have aided and enabled her to recover and reduce the period of hospitalization"; and that the prolonged period of her hospitalization and treatment, entailing the charges claimed in the complaint, resulted from said negligence on the part of the plaintiff, its agents, servants, employees or nurses.

Plaintiff demurred to "the entire answer" and, in the alternative, to the affirmative defense before mentioned. In both aspects, the demurrer was upon the ground that neither "the entire answer", nor the affirmative defense considered alone, stated facts sufficient to constitute a defense to the action, for the reason that there was, in neither, a sufficient denial of the allegation that the plaintiff was a political subdivision of Marion County, engaged in the operation of a public hospital for the benefit of public health and benevolent and charitable purposes.

The defendant thereupon moved for leave to file "an amended answer and counterclaim". The notice of the motion makes no reference to the nature or contents of the proposed "amended answer and counterclaim", but it is apparent from the circuit judge's order hereinafter mentioned that the proposed counterclaim was to be in tort, for damage sustained by Victoria Squires as the result of the negligence alleged in the answer. Apart from the plaintiff's claimed immunity from tort liability, a counterclaim for wrongful death could not have been interposed in this case. Cf. *Complete Auto Transit, Inc., v. Bass,* 229 S. C. 607, 93 S. E. 2d 912.

The demurrer and the motion were argued before the Honorable J. Woodrow Lewis, Judge of the Fourth Judicial Circuit; and from his order of December 28, 1957, overruling the former and granting the latter, the plaintiff has appealed.

The Mullins Hospital was erected and established pursuant to an act of the General Assembly of South Caro-

lina approved March 26, 1923 (XXXIII Stat. at L. 758). By that act the County Commissioners of Marion County were authorized and empowered to issue and sell bonds "for and on behalf of Reaves Township of said county * * * for the purpose of purchasing a site, erecting and equipping a hospital in said township to be located at Mullins, South Carolina", etc. For the purpose of carrying out its provisions, the act created a five-man commission, to be known as the Mullins Hospital Commission, naming its first members and providing that vacancies should be filled by appointment by the Governor "from the qualified electors of Reaves Township, upon the recommendation of the majority of the Legislative delegation from said county." The act conferred upon this commission authority to purchase a site and erect and equip the hospital, and charged it with "the direction and management of all the affairs pertaining to said hospital". It also made provision for the holding of an election on the question of the issuance of the bonds for the purchase of the site and the erection and equipping of the hospital. The election having resulted favorably, an action was then brought to enjoin the issuance and sale of the bonds upon the ground that the act of March 26, 1923, above referred to, was unconstitutional; and the decree of the circuit court holding the act valid, refusing the injunction, and dismissing the complaint, was affirmed by this court. *Battle v. Willcox,* 128 S. C. 500, 122 S. E. 516.

Section 4 of the 1923 act authorized the commission "to contract with some reliable person or persons, firm or corporation, for the operation of said hospital, either by lease or otherwise: Provided, They shall not have the power to make any contract that will place any expenses for the operation and running of said hospital upon the taxpayers of Reaves Township". By the act of March 14, 1927 (XXXV Stat. at L. 966), there was added to this section a proviso to the effect that the hospital should not be leased for longer than five years at an annual rental of less than $1,200.00. The 1927 act was repealed in 1930 (XXXVI Stat. at L. 1919).

By act approved March 13, 1931 (XXXVII Stat. at L. 885), the Mullins Hospital Commission was authorized to accept, without cost to the taxpayers of Reaves Township, a conveyance of the nurses' home adjoining the hospital, and all of the equipment belonging to Dr. L. M. Mc-Millan in the hospital and in the nurses' home. That act further empowered the Hospital Commission to operate the hospital through a competent superintendent to be employed by the commission, or to contract by lease or otherwise for its operation, as it might deem best, provided that no expense for the operation of the hospital should be placed upon the taxpayers of Reaves Township. It also made provision that vacancies in the membership of the commission should be filled by the qualified electors of Reaves Township at an election publicly advertised, the name or names of the person or persons receiving the majority of the votes cast to be certified to the Marion County legislative delegation and by it recommended to the Governor for appointment; and further provided for geographical distribution of the commission's membership, so that at no time more than three members should be residents of the town of Mullins.

Further amendment was by the act of March 2, 1934 (XXXVIII Stat. at L. 2105), whereby it was provided that the Mullins Hospital Commission should consist of nine members, of whom not more than seven should be residents of the town of Mullins; that they should hold office for four years and until the appointment and qualification of their successors; and that they should be chosen in the manner specified in the act of March 13, 1931.

By the act of February 19, 1947 (XLV Stat. at L. 1331), the original act (of March 26, 1923) was amended so as to provide that any surplus on hand from taxes, after the retirement of the bonds issued under Section 5 of the 1923 act, should be paid by the Treasurer of Marion County into the "Mullins Hospital Fund", to be used for further building purposes.

And finally, by an act approved May 14, 1955 (XLIX Stat. at L. 1214), The Mullins Hospital was expressly classified as and declared to be "a political subdivision of Marion County".

Appellant lists nine exceptions and states six "Questions Involved"; but there are actually only three issues that we need determine, and we think they will come into clearer focus if they are considered in the order below stated, to wit:

1. Was it error to overrule the demurrer to "the entire answer"?

2. Should the defendant be permitted to amend his answer by adding thereto the proposed counterclaim in tort?

3. Was it error to overrule the demurrer to the affirmative defense?

The demurrer to "the entire answer" was in truth directed to the first, or negative, defense. At least we shall so consider it; for as to that defense an issue is presented wholly different from that raised by the demurrer to the affirmative defense. The latter involves the question of plaintiff's immunity to a defensive claim based on alleged negligence of its agents; no such question is really involved in the demurrer to the negative defense, which was, we think, properly overruled. It was grounded, as we have said, upon the contention that that defense contained no sufficient denial of the allegation (complaint, par. 1) of plaintiff's political and charitable status. It is true, of course, that a defendant's mere denial that he has knowledge or information sufficient to form a belief as to the plaintiff's corporate capacity does not put that fact in issue. *Bank of Enoree v. Yarborough,* 120 S. C. 385, 113 S. E. 313; *Clanton's Auto Auction Sales, Inc., v. Campbell,* 230 S. C. 65, 94 S. E. (2d) 172. But in his first, or negative, defense, the defendant, admitting that the decedent had entered the hospital on the date alleged in the complaint, categorically denied the allegations of paragraph 2 wherein the plaintiff had alleged

that it had thereafter cared for, maintained and attended to her as its patient to the extent that she had become indebted to it in the amount claimed. By that denial the obligation of the decedent, and of her administrator, to the plaintiff, was clearly in issue, regardless of the latter's political or charitable status.

Plaintiff's resistance of the motion for leave to amend the answer by setting up a counterclaim for damages is based upon the contention that it is immune from liability in tort by virtue of its status as "a political subdivision of Marion County, engaged in the operation of a public hospital for the benefit of public health and benevolent purposes". The double aspect of this contention may be eliminated; for if the plaintiff's claim of immunity may soundly be rested upon its status as a political subdivision or governmental agency, whether or not it is also immune as a charitable corporation will become an academic question.

The common-law rule denying liability of municipal corporations in tort was an offshoot of the old maxim "the King can do no wrong", and of its corollary that the sovereign may not be sued without its consent. The municipality, being an agency of the sovereign, was accorded like immunity, at least against actions based upon negligence in the performance of governmental functions. In this country, various reasons for the rule have been stated from time to time, the more recent cases grounding it upon a public policy that opposes diversion of public funds to the payment of private damages. 38 Am Jur., Municipal Corporations, Section 573, pp. 265 *et seq.* In many jurisdictions the courts have drawn a distinction between municipal activities that are governmental and those that are in the field of business rather than of government and are loosely referred to as proprietary. But no such distinction is made in this state; all functions exercised by municipal corporations under powers constitutionally granted to them by the General Assembly are considered public and governmental. *Irvine v. Town of Greenwood,* 89 S. C. 511, 72 S. E. 228, 36 L. R. A., N. S.,

363; *Looper v. City of Easley,* 172 S. C. 11, 172 S. E. 705; *Carter v. City of Greenville,* 175 S. C. 130, 178 S. E. 508; *Hill v. City of Greenville,* 223 S. C. 392, 76 S. E. (2d) 294; *Sammons v. City of Beaufort,* 225 S. C. 490, 83 S. E. (2d) 153. Accordingly, it has long been the settled law of this state that, except as expressly permitted by statute, municipalities are immune from liability for the negligence of their agents or servants. This immunity is not restricted to counties, cities and towns, but extends as well to governmental agencies in general. *Mullinax v. Hambright,* 115 S. C. 22, 104 S. E. 309; *Brooks v. One Motor Bus,* 190 S. C. 379, 3 S. E. (2d) 42; *Sanders v. State Highway Department,* 212 S. C. 224, 47 S. E. (2d) 306; *Rice Hope Plantation v. South Carolina Public Service Authority,* 216 S. C. 500, 59 S. E. (2d) 132. An enactment by the General Assembly of statutes permitting, within limited spheres, actions *ex delicto* against certain municipal corporations and other governmental agencies (*e. g.,* Code, 1952, Sections 33-229, 33-921, 47-70, 47-71) emphasizes allegiance in this jurisdiction to the rule of immunity in cases not so excepted.

That The Mullins Hospital is a governmental agency is clearly apparent from its legislative history hereinbefore set forth. As was pointed out in *Battle v. Willcox, supra,* the 1923 act vested the title of the hospital building in Reaves Township as a body politic and corporate for the public use, and devolved its control and management upon public officers, officials of the township. Its governmental character was by implication reaffirmed in subsequent amendatory acts, and was expressly reaffirmed in the act of May 14, 1955, which declared it to be a political subdivision of Marion County. In the absence of a statute permitting it to be sued in tort for the negligence of its agents, servants, employees or nurses (and it has not been suggested that there is such a statute), such an action may not be maintained against it.

That the hospital charges for the services rendered to its patients does not deprive it of exemption, as a governmental

agency, from liability *ex delicto*. The situation is parallel to that in which a municipality operates, for the benefit of its citizens, but not without cost to them, a waterworks system or a plant for the generation or distribution of electricity. Nor is the case altered by the fact that the acts of 1923 and 1931 before mentioned provided that no expense for the operation of the hospital should be placed upon the taxpayers of Reaves Township. Cf. *Rice Hope Plantation v. South Carolina Public Service Authority, supra.*

Since the defendant could not have brought action on his tort claim against the hospital, he cannot assert such a cause of action by way of counterclaim in an action brought by the hospital. Its immunity from suit in tort, as an agency of government, is not removed by the fact that it is the plaintiff. *State v. Corbin & Stone,* 16 S. C. 533.

There remains for consideration the issue raised by the appeal from so much of the order as overruled the demurrer to the affirmative defense. Whether or not negligence of the agents or servants of a municipal corporation may be pleaded defensively in an action brought by it does not appear to have been decided in this state. In other jurisdictions the question has generally been presented where the municipality has sued for damage to its property resulting from alleged negligence of the defendant, and the latter has sought to defend upon the ground of contributory negligence of the plaintiff's employees. These cases are few, and conflicting; in the majority of them the plea of contributory negligence has been allowed. See Annotation following *Miller v. Layton,* 1945, 133 N. J. L. 323, 44 A. (2d) 177, in 1 A. L. R. (2d) at pages 827 *et seq.* The question was discussed, also, in *Adams v. District of Columbia,* D. C. Mun. App. 1956, 122 A. (2d) 765, where the real issue concerned allowance, in an action by the District for damage to its police patrol car resulting from alleged negligent operation of the defendant's car, of a counterclaim for damage sustained by the latter.

In the case at bar the affirmative defense pleads, in substance, that the prolonged hospitalization and treatment that defendant's intestate was required to undergo, and for the cost of which the plaintiff is suing, were not the normal result of her physical condition at the time when she entered the hospital for a routine examination, but were the result of the negligence of plaintiff's agents, servants, employees or nurses, in failing to discover the fracture of the hip that she had sustained at or about the time of her entry into the hospital. By that defense the defendant seeks to reduce the plaintiff's demand because of the latter's alleged negligent failure to perform its contractual duty to her as its patient. It is the defense of recoupment, well known to the common law; and the right to assert it has not been impaired by the adoption of code procedure. 47 Am. Jur., Set-off and Counterclaim, Section 6, p. 710.

Recoupment, unlike counterclaim, may result only in the reduction of the plaintiff's claim, and not in affirmative money judgment for any excess over that claim. Unlike set-off, it must grow out of the identical transaction that gave rise to the plaintiff's cause of action.

"Recoupment, therefore, is the right of the defendant to cut down or diminish the claim of the plaintiff in consequence of his failure to comply with some provision of the contract sought to be enforced, or because he has violated some duty imposed upon him by law in the making or performance of that contract. The delinquency or deficiency which will justify the reduction of the plaintiff's claim must arise out of the same transaction, and not out of a different transaction". Burks' Pleading and Practice, 4th Ed., Section 247, page 438, cited in *National Bank & Trust Co. at Charlottesville v. Castle,* 1955, 196 Va. 686, 85 S. E. (2d) 228; Vol. 36, Words and Phrases, Recoupment, pp. 563 *et seq.*

It is said that in the early English cases the remedy of recoupment was of such limited application and so beset with

technicalities that it was of little use, and that the term "recoupment" for a time became obsolete. "But the principle always remained, and as developed and permitted by the American courts, recoupment has attained a wider and more extended application than in England. Very generally, at least, if not altogether, the courts of this country have not restricted its application to cases where the defendant may recoup his damages for the purpose of affecting the value of the goods sold, or of the work done, but they have allowed the defendant to recoup damages suffered by him from any fraud, breach of warranty, or negligence of the plaintiff, growing out of and relating to the transaction in question. * * *" 47 Am. Jur., Set-off and Counterclaim, Section 9, p. 713.

Of necessity the rule of governmental immunity in ▇ tort often overrides the principle that for every injury the law provides a remedy; and for that reason, as well as because it is essentially a defensive rule, its application should never be extended to the point where it becomes, in the hands of an agency of government, a sword as well as a shield. May it be invoked, then, in an action brought by a governmental agency, to bar the defensive plea of recoupment? We think not; to permit the plaintiff to do so would be to strip the defendant of his shield and leave him defenseless, although the same circumstances that form the basis of the plaintiff's claim may show that in fairness it should be reduced or disallowed. Like conclusion was reached in *Commonwealth v. Berks County,* 1950, 364 Pa. 447, 72 A. (2d) 129, 130. There the Commonwealth of Pennsylvania sued the County of Berks for cost of maintaining in a state mental institution two criminals who had become insane while serving their sentences and had been transferred to the state hospital; and the County, answering, had denied the plaintiff's right to recover because of an alleged indebtedness due the County by the Commonwealth, the indebtedness so asserted having grown out of the Commonwealth's collection from persons legally liable for the

support of indigent insane persons the cost of their maintenance in state institutions, to which cost the County had theretofore contributed and for which contribution it claimed *pro tanto* reimbursement. The Supreme Court of Pennsylvania, affirming the judgment of the lower court, and holding that the respective claims of the Commonwealth and of the County had arisen out of what was, in legal contemplation, the same transaction, viz., the maintenance in state institutions of insane persons from the county, said: "So far as Pennsylvania's courts are concerned, it is only as the legislature may by law direct that suits may be brought against the Commonwealth * * * Nor is the State's consent any less essential where it is sought to interpose a claim against the Commonwealth by way of a set-off or counterclaim to a suit by it * * * Where, however, a State voluntarily submits to court jurisdiction by its institution of a suit, it at once renders available as a defense to the adverse party such of the latter's claims as have grown out of the transaction which gave rise to the sovereign's suit. 'A defendant's right in such regard is one of recoupment.' *In re Monongahela Rye Liquors, supra,* [3 Cir.] 141 F. (2d) [864] at page 869." See, also, *United States v. Laney,* D. C. S. C. 1951, 96 F. Supp. 482.

Insofar as the judgment of the lower court permitted amendment of the answer by adding thereto the proposed counterclaim, it is reversed; in all other respects it is affirmed.

Affirmed in part and reversed in part.

STUKES, C. J., and TAYLOR, OXNER and MOSS, JJ., concur.