**PARA–CHEM SOUTHERN, INC., Appellee,**

v.

**M. LOWENSTEIN CORPORATION, Appellant.**

**No. 82–1446.**

United States Court of Appeals, Fourth Circuit.

Argued April 14, 1983.

Decided Aug. 15, 1983.

Jack H. Tedards, Jr., Greenville, S.C. (Wesley M. Walker, Carl G. Ferguson, Leatherwood, Walker, Todd & Mann, Greenville, S.C., on brief), for appellant.

William M. Grant, Jr., Greenville, S.C. (Thomas H. Coker, Jr., John B. McLeod, Haynsworth, Perry, Bryant, Marion & Johnstone, Greenville, S.C., on brief), for appellee.

Before WINTER, Chief Judge, ERVIN, Circuit Judge, and BRYAN, Senior Circuit Judge.

HARRISON L. WINTER, Chief Judge:

Para-Chem Southern, Inc. (Para-Chem), invoking diversity jurisdiction, sued M. Lowenstein Corporation (Lowenstein) to recover payment for certain chemical compounds furnished by Para-Chem to Lowenstein, asserting in addition claims for breach of contract accompanied by a fraudulent act, fraud and conversion stemming from the same transaction. Lowenstein pleaded a recoupment defense and brought counterclaims; it alleged that under a continuing contract between the parties, Para-Chem had furnished defective compounds causing Lowenstein losses, which Lowenstein was entitled to set off against Para-Chem's claims.

The district court granted partial summary judgment for Para-Chem on its contract claims and entered judgment against Lowenstein for $434,331.68 plus interest from the due date of payment. Pursuant to Rule 54(b), F.R.Civ.P., it found that there was no just reason for delay and directed the entry of final judgment, with the effect of making the judgment both appealable and immediately payable.

Lowenstein appeals, contending that the partial summary judgment against it was not a final judgment and therefore should be vacated and this appeal dismissed. Albeit for reasons different from those advanced by Lowenstein, we conclude that the entry of final judgment was impermissible. We therefore dismiss the appeal and remand the case to the district court for further proceedings, with costs to be paid by Para-Chem.

I.

Lowenstein is a South Carolina manufacturer of coated mattress ticking fabric. Para-Chem produces chemical substances which it delivers to Lowenstein for use by

the latter in the coating process. Since 1978, the parties have had a continuing relationship, if indeed, not a single continuing contract, whereby Para-Chem has supplied the coating compound required by Lowenstein. The pattern of performance has been that Para-Chem would deliver the compound from time to time to Lowenstein on a consignment basis and Lowenstein would pay periodically for the quantity of substance used. This arrangement was employed so that Lowenstein would always have the coating compound available for use in continuous production.

When the dealings between the parties began in 1978, Para-Chem supplied an SBR latex product. Later, in early 1980, Para-Chem on its own initiative supplied a compound having a different trade name, although it was still an SBR latex product. There came a time, however, when Lowenstein began to receive complaints that the ticking fabric coated with the SBR compound was "yellowing" and "dusting." As a result of investigations and discussions about the cause of the problem and means to eliminate it, Para-Chem undertook to supply a substitute compound—an acrylic coating compound. Despite the substitution the previous arrangement of deliveries on consignment and payment after use continued, except that Lowenstein, apparently having paid for all of the SBR compound that it had used, failed to pay for the acrylic compound for which it was billed during the first five months of 1981.

Lowenstein does not dispute that it has received no complaints with respect to the acrylic compound nor does it dispute the quantities for which it was billed or the prices therefor. Its defense is that its losses from defective merchandise supplied by Para-Chem greatly exceed any amounts it may owe. According to the affidavit of Lowenstein's vice president and general manager, these complaints amounted to many hundreds of thousands of dollars in losses to Lowenstein and, as of approximately March 2, 1982, the losses were continuing to mount.

The first and second causes of action in Para-Chem's suit against Lowenstein were claims for payment for the acrylic compound supplied and billed in the first five months of 1981 and for the compound supplied but not yet billed, respectively. The third cause of action alleged a breach of the contract accompanied by fraud on the part of Lowenstein by ordering and accepting goods without intending to pay for them.[1] The fourth cause of action was for just the fraud on the part of Lowenstein in inducing Para-Chem to make deliveries when Lowenstein did not intend to pay. And the fifth cause of action was for conversion. With regard to the third, fourth and fifth causes of action, Para-Chem claimed punitive as well as compensatory damages. As Lowenstein did not seriously contest that it had ordered, accepted and used acrylic compound for which it had not paid, Para-Chem moved for partial summary judgment with respect to its first and second causes of action. Lowenstein, in opposition thereto, filed an affidavit of its vice president and general manager to the effect that there was a "continuous and uninterrupted business arrangement between the parties throughout the relevant time period."

The district court viewed the business relations of the parties as arising from "at least two separate and distinct transactions ...." It ruled that under South Carolina law a party could not recoup losses sustained as a result of the other party's breach of contract by deducting them from the amounts owed under another contract. Rather, it held, recoupment is available only when the conflicting claims of the parties arise out of the same transaction. In applying this rule, the district court viewed Lowenstein's purchases of SBR compound and its purchases of acrylic compound as separate transactions; and since liability was not disputed for Lowenstein's purchases of acrylic, the court gave partial summary

1. The theory of breach accompanied by fraud is recognized as a distinct cause of action under South Carolina law. *See Plowden v. Atlantic States Construction Co.,* 264 S.Ct. 139, 213 S.E.2d 100 (1975).

judgment to Para-Chem. Directing that this judgment be entered as final pursuant to Rule 54(b), the district court reasoned that it may be "many months" before Lowenstein's counterclaims are decided, that Para-Chem's claim was both large and liquidated, and that "[t]he difference between the pre-judgment and market interest rates could cause [Para-Chem] to suffer a severe daily financial loss ..." unless the judgment was made final. The judgment was expressly entered without prejudice to Para-Chem's right to pursue its other causes of action and Lowenstein's right to pursue its counterclaims.

## II.

Rule 54(b), F.R.Civ.P., permits a district court to enter final judgment as to one or more but fewer than all claims in a multi-claim action when there is "more than one claim" for relief presented in the action, and there "is no just reason for delay." We think that on the present record the district court was in error in deciding that the action with respect to Para-Chem's claim to payment and Lowenstein's claim to reduction in liability by way of recoupment or setoff constituted more than one claim.

This being a diversity action, we look to the law of South Carolina to determine the relationship between Para-Chem's claim and Lowenstein's defense and counterclaim. As the district court stated, the South Carolina Supreme Court has clearly held that recoupment "must grow out of the *identical* transaction that gave rise to the Plaintiff's claim." (emphasis added). *Tuloka Affiliates, Inc. v. Moore*, 275 S.C. 199, 268 S.E.2d 293, 295 (1980). To the same effect is *Mullins Hospital v. Squires*, 233 S.C. 186, 104 S.E.2d 161, 166 (1958), on which *Tuloka* relies. Neither *Tuloka* nor *Mullins Hospital,* however, defines what is an "identical" transaction.[2]

Unlike the district court, which concluded that Lowenstein's purchases of the SBR compounds and the acrylic compounds "were separate and distinct from one another," our review of the record persuades us that it is far from clear as to whether the several purchases were part of a single transaction or whether they were separate and distinct transactions. The record does not contain any writings (i.e., contracts, purchase orders, etc.) between the parties other than copies of invoices submitted by Para-Chem to Lowenstein. The record contains scant other evidence from which it can be said that the crucial factual question of whether there was one or several transactions is beyond dispute. In an affidavit by an officer of Lowenstein setting forth the dealings between the parties, it is recited that Para-Chem undertook to supply coating material in September 1978, that the original product which Para-Chem supplied was changed in March 1980, and that when Lowenstein later began to receive complaints about its product and the cause was traced to Para-Chem's SBR latex, an acrylic coating compound was substituted. That officer unqualifiedly asserts that "Lowenstein's use of the Para-Chem acrylic coating compound was a continuation of the same business arrangement involving the SBR latex." The affidavit asserts that the consignment arrangement, the method of supply and the method of billing were all unchanged after the substitution of the compound which was supplied.

It is true, as the district court stressed in arriving at its decision, that the SBR latex and the acrylic compound were two separate and distinct products and that the parties negotiated the substitution of the latter for the former. To our minds, however, this does not foreclose the possibility that the parties, perhaps as early as September 1978, entered into a single supply contract for Para-Chem to supply Lowenstein's

---

**2.** In *Tuloka,* the court held that a defendant was entitled to plead a recoupment defense to the plaintiff's action in claim and delivery where the recoupment defense was grounded on allegations of failure to make required disclosures in connection with the loan transac-

tion. In *Mullins Hospital* an administrator was held entitled to plead recoupment as a defense to a suit to collect charges for treatment of the decedent. The right to recoupment was alleged to arise from negligence on the part of the hospital staff in treating the decedent.

needs for coating material, with modification from time to time of the exact chemical compound to be supplied. Modification of a single specification of what is an otherwise ongoing contract would not necessarily create a new and separate contract. Modification is possible under the South Carolina commercial code without new consideration. S.C.Code Ann. § 36–2–209 (Law.Co-op. 1976).

We, of course, do not decide that there was but a single contract between the parties such that recoupment under South Carolina law is a good defense here if Lowenstein can prove its allegations. All we decide is that on the present record it cannot be said whether there was one, two or even three contracts between the parties. Thus it was not shown that there was no genuine issue as to all of the material facts requisite to a final summary judgment, and therefore a final summary judgment (as distinguished from summary judgment as to liability) was premature.

### III.

As an alternative ground of decision, we think also that the entry of final judgment was in violation of the requirement of Rule 54(b) that there be "no just reason for delay" in the entry of final judgment.

This part of Rule 54(b) was considered in *Curtiss-Wright Corp. v. General Electric Company,* 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980). There the Court reversed a judgment of the Third Circuit Court of Appeals that a district judge had abused his discretion in certifying as final plaintiff's $19 million contract claim in the face of substantial non-frivolous counterclaims. The Court rejected the Third Circuit's imposition upon Rule 54(b) analysis of a virtual *per se* denial of certification whenever the defendant can show a real possibility of offsetting plaintiff's primary claim by recovering on counterclaims, calling such a rule "a misinterpretation of the standard of review for Rule 54(b) certifications and a misperception of the appellate function in such cases." *Id.* at 9, 100 S.Ct. at 1465.

*Curtiss-Wright* teaches that a proper exercise of discretion by a district court should not be disturbed lightly, since the Rule constitutes the district court as a "dispatcher ... to determine in the first instance, the appropriate *time when each 'final decision'* ... in a multiple claims action is ready for appeal." *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 435, 76 S.Ct. 895, 899, 100 L.Ed. 1297 (1956) (emphasis in original). Our role as an appellate court "is not to reweigh the equities or reassess the facts but to make sure that the conclusions derived from those weighings and assessments are juridically sound and supported by the record." *Curtiss-Wright, supra,* 446 U.S. at 10, 100 S.Ct. at 1466. To perform this role we must initially satisfy ourselves that such weighings and assessments were made below with the relevant considerations in mind; otherwise, we cannot conclude that they are "juridically sound."

An important consideration in a proper Rule 54(b) analysis is "whether the nature of the claims already determined was such that no appellate court would have to decide the same issue more than once even if there were subsequent appeals." *Curtiss-Wright, supra,* 446 U.S. at 8, 100 S.Ct. at 1465. We do not understand the possibility of repetitive appellate review of the same issues to be sufficiently foreclosed here. If we were to decide that a state law recoupment defense *had* been properly stated under a single contract by Lowenstein, our conclusion would have to be that summary judgment was incorrectly granted in favor of Para-Chem. The case would return to the district court for trial on the merits of the recoupment defense. There would remain a likelihood of a subsequent appeal challenging whatever judgment would be reached, again raising the issue of the scope of the recoupment defense under state law, only this second time calling for a decision on the issue in light of facts adduced at trial. Conversely, if we were to conclude that recoupment was not a properly pleaded defense, facts emerging from the subsequent litigation of Lowenstein's setoff counterclaim might well provide a basis for questioning the soundness

of that conclusion in hindsight. An appeal after adjudication of the counterclaims might then bring back to us the recoupment issue, although perhaps dressed in a slightly different guise in an attempt to avoid intricate "law of the case" issues. Given the intertwining of issues in this case, any present rulings on matters such as recoupment are not likely to be our last, for unlike *Curtiss-Wright* we do not have defenses and counterclaims "severable from the claims which had been determined in terms of both the factual and legal issues involved." *Id.* at 9, 100 S.Ct. at 1465.

*Curtiss-Wright* does not hold that the possibility of successive appeals of the same issues necessarily requires the denial of certification under the Rule. *Curtiss-Wright, supra*, 446 U.S. at 8 n. 2, 100 S.Ct. at 1465 n. 2. But we discern no sufficiently important countervailing reason for granting the certification. The predominant concern of the district court in finding no just reason for delay was that Para-Chem faced a potentially severe monetary loss from the "difference between the pre-judgment and market interest rates." Yet, under a long line of South Carolina cases acknowledged by this circuit and the district courts located there, interest may accrue on even an unliquidated sum found owing a party "from the time the money due should have been paid until the time of the judgment." *Montgomery Ward & Co. v. Collins Estate, Inc.*, 268 F.2d 830, 838 (4 Cir.1959) (citing South Carolina authority); *see also Johnson v. Aetna Insurance Company*, 308 F.Supp. 33, 36 (D.S.C.1970). Moreover, "the South Carolina courts and those in the Fourth Circuit [unlike courts allowing only the statutory interest rate,] have held that the rate of interest, whether recoverable specifically as interest, or included as an element of general damages, should not be determined according to any specific statutory rate, but should be reasonable in amount as the circumstances of the case warrant." *M.B.A. F.B. Federal Credit Union v. Cumis Insurance Society, Inc.*, 507 F.Supp. 794, 798

(D.S.C.1981), *aff'd*, 681 F.2d 930 (4 Cir. 1982).

Unlike the district court in *Curtiss-Wright* that was limited by the forum state's 6 percent pre-judgment statutory rate of interest, then, the district court here possessed equitable power to avoid casting entirely upon Para-Chem the risk of losing a fair return on money owed pending final determination of all other claims. Its error on this point is significant. In order to exercise the "sound judicial discretion" required in a Rule 54(b) analysis, the district court must possess a clear and accurate picture of the competing equities. The district court's evaluation of the availability of a fair pre-judgment rate of interest, coupled with the lack of any other reason to risk redundant appellate review, persuades us that it abused its discretion in ruling that this was a proper case for a Rule 54(b) certification of a final judgment as to plaintiff's contract claim.

APPEAL DISMISSED; COSTS TO BE PAID BY APPELLEE.[3]

BRYAN, Senior Circuit Judge, concurring specially:

In lieu of an opinion, I would have disposed of this appeal by a motion, *ex mero motu*, to dismiss. The case simply is not yet before us because no appeal has been *perfected*. In my view the record demands, on two grounds, immediate vacation of the attempted appeal from the District Court's order.

First: The order is plainly not appealable because it is not a final order as required by 28 U.S.C. § 1291 (as amended April 2, 1982) and has not been made final under the provisions of F.R.Civ.P. 54(b). Indeed, the order does not purport to dispose of any distinct claim for relief. It leaves unadjudicated many substantial issues that are inextricably entwined with the matter it purports to resolve.

Second: It is but a "piecemeal" appeal, obviously impermissible and one to be va-

---

**3.** Although as a technical matter the appeal is dismissed because we conclude that it should not properly have been allowed, Lowenstein, the appellant, has prevailed. We think that it is just that costs be assessed against the appellee, Para-Chem.

**134**

cated. *Curtiss-Wright v. General Electric Co.*, 446 U.S. 1, 10, 100 S.Ct. 1460, 1466, 64 L.Ed.2d 1 (1980).

Conclusion: Further observation by this Court of the case in its present ·stature is unwarranted. I would return it to the District Court with instructions to resume and complete the trial. On remand, the record would consist of such evidence as already has been received and such rulings as have been made relating to the pleaded claim and counterclaims. Additional evidence and further rulings will follow from this point on, in the ordinary course, as well as arguments of counsel, until final adjudication of the litigation by the trial court.