**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

EDWARD F. FOX; THOMAS L. GRIMES;
JAMES HORNER; EDWARD KOLUCH;
JOSEPH KUNDRAT; VINCENT C.
MOULTER; GARY RAUB; CHARLES
RUMMEL; HERBERT HEWLETT; BARRY
WOOD; WILLIAM HELMICK,
Plaintiffs-Appellants,

and

LAWRENCE AMES; THOMAS BULL;
TERRY CAUDELL; JOSEPH CONWAY;
FREDERICK J. DILLON; RONALD
EKLUND; RONALD KENNEDY; JAMES
KIRKPATRICK; GEORGE LEICHLING;
MARK LINDSAY; JOHN F. X. O'BRIEN;

No. 98-2618

JOSEPH WASHINGTON PETERS; DAVID
PHIPPS; FREDRIK ROUSSEY; FRANCIS
SCHMITZ; RICHARD WAYBRIGHT; JOHN
WISSMAN,
Plaintiffs,

v.

THE BALTIMORE CITY POLICE
DEPARTMENT; COMMISSIONER,
BALTIMORE CITY POLICE DEPARTMENT,
Defendant-Appellees,

and

EDWARD WOODS, Commissioner,
Baltimore City Police Department,
Defendant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, District Judge.
(CA-91-2784-WMN)

Argued: October 28, 1999

Decided: January 13, 2000

Before MURNAGHAN, MOTZ, and KING, Circuit Judges.

_____

Affirmed by published opinion. Judge Motz wrote the opinion, in
which Judge Murnaghan and Judge King joined.

_____

**COUNSEL**

**ARGUED:** Michael Lawrence Marshall, SCHLACHMAN, BELSKY
& WEINER, P.A., Baltimore, Maryland, for Appellants. William
Rowe Phelan, Jr., OFFICE OF THE CITY SOLICITOR, Baltimore,
Maryland, for Appellees. **ON BRIEF:** Otho M. Thompson, City
Solicitor, Kathryn E. Kovacs, BALTIMORE CITY LAW DEPART-
MENT, Baltimore, Maryland, for Appellees.

_____

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

For some years, the Baltimore City Police Department and its offi-
cers have disputed the legality of the Department's policy limiting
enlistment in the Armed Forces reserves and National Guard. This
case involves twenty-eight officers who claim that they were denied
access to the reserves in violation of the Veterans' Reemployment
Rights Act. The district court held that the 1986 amendments to the
Act, establishing protections for those who wish to join the reserves,
do not apply retroactively. Finding that for this reason eleven of the

twenty-eight officers could not prevail, the district court granted the Department summary judgment as to the claims of those officers and certified that judgment as final pursuant to Rule 54(b). Because the district court did not abuse its discretion in certifying its judgment for immediate appeal, and because it properly interpreted the Act, we affirm.

I.

The Baltimore City Police Department's policy of restricting access to the Armed Forces reserves and National Guard has spawned three separate federal lawsuits. In 1979, a group of officers sued the Department for its refusal to permit them to enlist, alleging a denial of their equal protection rights. The settlement of that case, Kundrat v. Pomerleau, Civ. No. T-79-2198 (D. Md. 1981), permitted two of the officers whose claims are here on appeal--Officers Kundrat and Helmick--to join the reserves. The settlement also prompted the Department to establish a policy under which a maximum of 100 Department employees were permitted to be members of the reserves at any given time. After the Department reached its 100-person limit, it placed other officers who asked to join the reserves on a waiting list.

In the second lawsuit, this court addressed whether the 100-person cap itself violated the Veterans' Reemployment Rights Act, 38 U.S.C. § 2021 (1988) (VRRA), amended by 38 U.S.C. § 4301 (1994). See Kolkhorst v. Tilghman, 897 F.2d 1282 (4th Cir. 1990), cert. denied, 502 U.S. 1029 (1992). That statute, as amended in 1986, prohibits a state or political subdivision from denying hiring, promotion or other "advantage of employment" to any individual because of that person's service in a "Reserve component of the Armed Services." 38 U.S.C. § 2021(b)(3), amended by 38 U.S.C.§ 4301(b)(3) (1994).[1] We held

_____

[1] VRRA was renumbered and renamed in 1992. See Veterans' Benefits Act of 1992, Pub. L. No. 102-568, § 506, 106 Stat. 4340. In 1994, Congress substantially modified and again retitled the Act. See Uniform Services Employment and Reemployment Rights Act, 38 U.S.C. §§ 4301-33 (1994). The 1994 amendments do not apply to the claims at issue here. For clarity, we follow the practice of the parties and the district court of referring to the statute as it was titled and codified at the initiation of this action.

that the Department's 100-person policy "conflict[ed] directly with the language and purpose of [the statute]," and thus invalidated the cap. Kolkhorst, 897 F.2d at 1285.

In the wake of our holding in Kolkhorst, twenty-eight officers brought the instant action, seeking lost pay and retirement benefits under VRRA for the Department's refusal to permit them to enlist in the reserves. This third lawsuit, filed in September 1991, has already been the lengthiest of the three actions, and the district court order we review here would only resolve the claims of eleven of the twenty-eight plaintiffs.

Those eleven officers all requested, formally or informally, to join the reserves prior to 1986. Their claims rest on retroactive application of the 1986 amendments to VRRA, which extended the Act's protections to those seeking to join the reserves. See Pub. L. No. 99-576, 100 Stat. 3248 (1986). The district court held that the 1986 amendments do not apply retroactively. It then referred the case to a magistrate judge to determine, in light of this holding, which of the twenty-eight officers could state a claim for recovery.

The magistrate judge recommended that summary judgment be granted to the Department on the claims of Officers Fox, Grimes, and Moulter. These officers had never formally asked to be placed on the Department's waiting list before or after 1986. They nevertheless contended they were entitled to recover because the Department assertedly discouraged them from making a formal request, and because, in any event, such a request would have been futile.

The district court adopted the recommendation of the magistrate judge rejecting these arguments and granted summary judgment to the Department on the three officers' claims. The court also granted summary judgment to the Department with respect to eight other officers who failed to pursue their claims further after the district court's initial ruling on retroactivity: Officers Helmick, Hewlett, Horner, Koluch, Kundrat, Raub, Rummel, and Wood.

Finding "no just reason for delay in the entry of judgment," the district court, pursuant to Fed. R. Civ. P. 54(b), certified its order as final

4

as to these eleven officers, and therefore suitable for immediate appeal.

II.

Initially, we must determine whether, as the Department maintains, the district court's entry of final judgment under Rule 54(b) was unwarranted.

We lack jurisdiction to review a district court's order unless that order constitutes a "final" judgment. See 28 U.S.C. § 1291 (1994). This limit on appellate jurisdiction guards against the waste of judicial resources and the unnecessary resolution of issues later rendered moot, reflecting what has been described as an "historic federal policy against piecemeal appeals." Curtiss-Wright Corp. v. General Elec. Co., 446 U.S. 1, 9 (1980) (quoting Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 483 (1956)). Ordinarily, a district court order is not "final" until it has resolved all claims as to all parties. See Braswell Shipyards, Inc. v. Beazer East, Inc., 2 F.3d 1331, 1335 (4th Cir. 1993).

Rule 54(b), however, provides a vehicle by which a district court can certify for immediate appeal a judgment that disposes of fewer than all of the claims or resolves the controversy as to fewer than all of the parties. Pursuant to that rule, "the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Fed. R. Civ. P. 54(b). In the case at hand, the district court expressly directed entry of judgment and expressly determined that there was no just reason for delay. The court failed, however, to state the rationale for its certification. The Department maintains that because of this omission, and because "hearing this appeal is not in the interest of sound judicial administration," Brief of Appellees at 15, we should dismiss the appeal.

We can only reverse a district court's Rule 54(b) certification if we determine that the district court has abused its discretion. See Curtiss-Wright, 446 U.S. at 8. Moreover, we defer to the district court's initial determination that a judgment is final and no just reason exists for

5

delay. We must necessarily accord the district court less deference, however, when, as here, the court offers no rationale for its decision to certify. See Braswell, 2 F.3d at 1336. Nonetheless, the district judge remains better-situated than an appellate court to consider the impact of certification on the parties and on the further resolution of the case.

The Supreme Court has described in some detail our role and that of the district court in the context of Rule 54(b) certifications. See Curtiss-Wright, 446 U.S. at 9. The Court likened the district court to a "dispatcher," to whose "sound judicial discretion" is left the determination regarding the appropriateness of immediate appeal. Id. The appellate court's role on review, the Court explained, has "two aspects":

> The court of appeals must, of course, scrutinize the district court's evaluation of such factors as the interrelationship of claims so as to prevent piecemeal appeals in cases which should be reviewed as single units. But once such juridical concerns have been met, the discretionary judgment of the district court should be given substantial deference, for that court is "the one most likely to be familiar with the case and with any justifiable reasons for delay.

Id. at 10 (quoting Sears, 351 U.S. at 437).

In determining whether to certify a judgment as final and suitable for immediate appeal, a district court must take into account two broad sets of considerations--the parties' interest in swift resolution of their disputes, and the "juridical concerns" of preserving judicial resources and guarding against the unnecessary resolution of issues. See id. Certification should be avoided when further trial court proceedings might force an appellate court to revisit the issues relevant to the partially-resolved case. A district court must be particularly wary of certification when new facts might come to light in those further proceedings that would "provide a basis for questioning the soundness" of the appellate court's prior conclusions. See Para-Chem S. Inc. v. M. Lowenstein Corp., 715 F.2d 128, 132 (4th Cir. 1983); see also Braswell, 2 F.3d at 1335; Cullen v. Margiotta, 811 F.2d 698, 710-11 (2d Cir. 1987). Similarly, certification generally is inappropri-

6

ate when further proceedings might moot the issues involved. <u>See</u> <u>Braswell</u>, 2 F.3d at 1335 (<u>citing Allis-Chalmers Corp. v. Philadelphia</u> <u>Elec. Co.</u>, 521 F.2d 360, 364 (3d Cir. 1975)).

In the present case, these juridical concerns do not counsel against Rule 54(b) certification. The central question raised on appeal-- whether the 1986 amendments to VRRA apply retroactively--is a pure question of law. We foresee nothing that could emerge from further proceedings that would either alter our analysis of this question or render it moot. The appellant officers' alternative arguments--that the Department should be estopped from defending this action and that putting one's name on the waiting list was a"futile gesture"-- admittedly raise somewhat more fact-sensitive issues. But because the claims of the eleven appellant officers emerge from factual circumstances clearly distinct from those on which the remaining plaintiffs base their claims, we do not believe that our resolution of questions raised in this appeal will have any deleterious effect on the remaining claims.

On the contrary, because resolution of this appeal will eliminate much uncertainty as to the size of the plaintiff class and the amount of damages potentially available to the plaintiffs, it will streamline the resolution of the remaining plaintiffs' claims. Indeed, although the Department argued that Rule 54(b) certification was improper, its counsel conceded at oral argument that there would be no "terrible consequences" if we were to hear the appeal at this time.

Therefore, although further explanation from the district court undoubtedly would have been helpful, we hold that the court did not abuse its discretion in certifying its judgment as final under Rule 54(b).

III.

We move to the merits of the appeal. The appellant officers present three arguments as to why the district court erred in granting summary judgment to the Department. We address each in turn.

A.

First, the appellant officers maintain that the 1986 amendments to VRRA apply retroactively.

7

Prior to 1986, VRRA allowed an employer to refuse to hire a worker unless he or she agreed to forego service in the reserves. Congress amended the statute in 1986 to provide that"[a]ny person who seeks or holds a position [with a government or private employer] shall not be denied hiring, retention in employment, or any promotion or other incident or advantage of employment because of any obligation as a member of a Reserve component of the Armed Forces." 38 U.S.C. § 2021(b)(3) (1988) (emphasis added), amended by 38 U.S.C. § 4301(b)(3) (1994). Congress added the emphasized language to establish that those who "seek[ ]" a position of employment may not be denied "hiring" on the basis of reserve service, any more than those who "hold" a position can be denied "retention" on that basis. See Pub. L. No. 99-576, 100 Stat. 3248 (1986). Moreover, the 1986 amendments necessarily mandate a related obligation on employers not to hinder present employees from joining the reserves. See Boyle v. Burke, 925 F.2d 497, 501 (1st Cir. 1991).

The appellant officers maintain that the 1986 amendments should apply to the Department's pre-1986 refusals to permit them to join the reserves. Such a reading would give retroactive effect to the 1986 amendments, because it would "attach[ ] new legal consequences to events completed before [the amendments'] enactment." Landgraf v. USI Film Prods., 511 U.S. 244, 270 (1994). As the Supreme Court has recognized, there is a deep-rooted presumption against retroactivity in Anglo-American jurisprudence. This presumption emerges from the basic principle that parties "should have an opportunity to know what the law is and to conform their conduct accordingly." Id. at 265. In construing legislative enactments, we must therefore "apply this time-honored presumption unless Congress has clearly manifested its intent to the contrary." Hughes Aircraft Co. v. U.S. Ex Rel. Schumer, 520 U.S. 939, 946 (1997).

Like the district court, we find absolutely no evidence that Congress intended the 1986 amendments to apply retroactively. In arguing to the contrary, the appellant officers rely on a snippet of legislative history and two First Circuit cases, none of which support their reading of the amendments.

As for the legislative history, Congressman G.V. Montgomery, who chaired the House Veterans' Affairs Committee when the 1986

8

amendments were enacted, did state that "refusal to allow already hired employees to join the Reserves or National Guard" would violate the Act. 132 Cong. Rec. H9297 (daily ed. Oct. 7, 1986) (statement of Rep. G.V. Montgomery). However, Rep. Montgomery also said that "[t]hese refusals are all contrary to the spirit and intent of 2021(b)(3) as it is now being amended." Id. (emphasis added). This passage thus indicates that the Chair regarded the amendments as extending, not simply clarifying, the Act's protections. Thus, the Chair's statement undercuts, rather than supports, the appellant officers' position.

The First Circuit cases cited by the appellant officers also tend to undermine their retroactivity argument. Boyle v. Burke held that, for purposes of qualified immunity, the extent to which the pre-1986 VRRA protected the rights of employees to join the reserves was not clearly established. 925 F.2d at 500-02. Although the Boyle court expressly declined to define the precise application of VRRA to pre-1986 employer conduct, its analysis indicates significant skepticism that the changes worked by the 1986 amendments can be read to apply retroactively. Id. at 501 ("The legislative history . . . indicates that Congress intended the amendment to extend the coverage of the Act to current employees seeking to join the reserves--a category apparently unprotected prior to 1986.") (emphasis added). The remaining case relied on by the appellant officers, Diaz-Gandia v. Dapena-Thompson, 90 F.3d 609 (1st Cir. 1996), does not even involve an asserted right to join the reserves, let alone a right to do so prior to 1986. Rather, in Diaz-Gandia, the plaintiff, who had joined the reserves in 1987, maintained that his employer harassed him because of his reserve status. The case lends no support to the appellant officers' position on retroactivity.

In sum, we agree with the district court that the 1986 amendments do not apply retroactively.

B.

Because the 1986 amendments do not apply retroactively, the crucial question becomes whether any of these eleven officers can recover for the period between October 1986, when the amendments became effective, and 1990, when the Department finally changed its

9

policy to comply with the law. Officers Kundrat and Helmick had already joined the reserves in 1981, pursuant to the Kundrat settlement; they clearly cannot recover for the 1986 to 1990 period. The remaining nine officers contend that they should be treated as if they had active requests to join the reserves during the relevant period. None, however, made any request to enlist between 1986 and 1990. Nor do any of their names appear on the Department's waiting lists after 1986.

The officers contend that the Department is estopped from arguing that they should have put their names on the waiting list. An estoppel may arise when the party to be estopped made a misleading representation on which the party asserting the estoppel reasonably relied to his detriment. See Heckler v. Community Health Servs., 467 U.S. 51, 59 (1984).

The appellant officers claim to have relied on a memorandum issued by the Department in response to officers who had put their names on the waiting list. This memorandum informed the wait-listed officers that their requests to enlist would be"maintained in order by date of receipt" and that they would be "promptly notified when manning levels allow approval." The appellant officers view the language of this memorandum as "clear evidence that the Department was fostering the understanding among all plaintiffs, including the Appellants, that they need not make any further inquiry, oral or written, in order to continue to be considered for permission to join the Reserves or National Guard." Brief of Appellants at 25-26. The officers thus appear to contend that, upon learning that their colleagues whose names were on the waiting list had been told that nothing further was required, they reasonably assumed that they, too, needed to do nothing further, even though they had not put their own names on the waiting list.

This argument is meritless. If the appellant officers actually had relied on the departmental memorandum, they would have joined their colleagues on the waiting list because the memorandum suggests that doing so was a prerequisite for obtaining permission to enlist. Because the appellant officers proffer no evidence that they reasonably relied on the departmental memorandum, their estoppel argument necessarily fails.

10

C.

Taking a somewhat different approach, the appellant officers maintain that they did not put their names on the Department's waiting list because doing so would have been a futile gesture. They contend that because of this "futility" they should be regarded as having been denied the opportunity to join the reserves between 1986 and 1990, when the Department had a duty under the amended VRRA to permit them to enlist. The Department contends that this argument was not raised below. Although the argument has developed significantly on appeal, the officers' district court filings set forth the argument with sufficient clarity for it to be considered on its merits here.

The appellant officers rely on International Bhd. of Teamsters v. United States, 431 U.S. 324 (1977), in which the Supreme Court held that minority bus drivers who had not applied for more favorable positions from their employer could nonetheless recover for the employer's discriminatory seniority and promotion policies under Title VII, because submitting an application under those policies would have been futile. "When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture," the Court reasoned,"he is as much a victim of discrimination as is he who goes through the motions of submitting an application." Id. at 365-66. The Court therefore permitted each bus driver, on remand, to undertake "the not always easy burden of proving that he would have applied for the job had it not been for [the discriminatory] practices." Id. at 368.

Teamsters drew from labor law precedent. The courts have enforced NLRB orders mandating that an employer hire union members who had not applied for available positions, because the employer's disposition toward union members made such application futile. See NLRB v. Nevada Consol. Copper Corp., 316 U.S. 105 (1942). Similarly, courts have upheld orders directing employers to reinstate striking workers who had not applied for their old jobs, because doing so would have been futile. See, e.g., Marlene Indus. Corp. v. NLRB, 712 F.2d 1011, 1018-19 (6th Cir. 1983).

The Teamsters futile gesture doctrine has subsequently been applied in other areas of employment discrimination law. See, e.g.,

11

Malarkey v. Texaco, Inc., 983 F.2d 1204, 1213 (2d Cir. 1993) (applying futile gesture doctrine to ADEA claim). It has also been extended to claims for relief from unconstitutional public employment practices. See Terry v. A.C. Cook, 866 F.2d 373, 378-79 (11th Cir. 1989) (reversing dismissal of § 1981 claim in which public employees contended that elected sheriff's stated intention to replace all of previous sheriff's staff made reapplication process futile).

We have applied the futile gesture doctrine when a prospective leasehold purchaser did not apply to a housing development with a policy of refusing black applicants. See Pinchback v. Armistead Homes Corp., 907 F.2d 1447 (4th Cir. 1990). In doing so, we expressly acknowledged that our holding extended the futile gesture doctrine, and we took great care in justifying this extension. We explained that, "[a]lthough fair employment and fair housing statutes create and protect distinct rights, their similarities have traditionally facilitated the development of common or parallel methods of proof when appropriate." Id. at 1451. As a result, we did not "consider novelty a bar to the application of the doctrine." Id.

Proceeding with the same care in considering the officers' invitation to extend the futile gesture doctrine here, we must conclude, for two reasons that the facts in this case do not warrant such an extension.

First, and most importantly, putting one's name on the Department's waiting list seems not to have been, in the strictest sense of the word, futile. Uncontroverted evidence in the record establishes that, throughout the 1980's, several employees on the waiting list received permission to join the reserves.[2] Certainly, the odds of being

_____

[2] In her deposition testimony, Charlene DePasquale, the Department employee charged with maintaining the waiting list, referred to at least seven employees who had been on the waiting list and who had obtained permission from the Department to join the reserves. The officers, who heavily rely on DePasquale's testimony in other respects, have not contested this evidence, but have only suggested that in two cases the Department was merely acting in response to the ongoing Kolkhorst litigation. Even if this is so, the waiting list appears to have been the operative avenue for obtaining the Department's permission to join the reserves.

12

elevated from the waiting list were not good, and the Department does not appear to have adhered strictly to the employee's rank order on the list. But the appellant officers have simply not established that putting their names on the waiting list would have been futile. After all, many of their colleagues saw fit to do so, and some ultimately gained access to the reserves from the waiting list.

Second, the nature of the right at issue weighs against our extension of the futility doctrine here. In Teamsters , the Supreme Court emphasized the injustice of denying relief to persons who had been "unwilling to subject themselves to the humiliation of explicit and certain rejection." 431 U.S. 365 ("If an employer should announce his policy of discrimination by a sign reading "Whites Only" on the hiring-office door, his victims would not be limited to the few who ignored the sign and subjected themselves to personal rebuffs."). Subsequent cases applying the futile gesture doctrine have often involved an unequal power dynamic and a climate of fear, prejudice, or antagonism, discouraging potential applicants from submitting an application. For example, in Pinchback, we held that the prospective buyer

> had no need to examine the property after Dailey told her no blacks could live there for precisely the same reasons why she had no need to exercise the futility of submitting an offer. The burden of humiliation occasioned by discrimination is heavy. When one has felt it as Pinchback did here, we cannot require the victim to press on meaninglessly.

907 F.2d at 1452. Nothing in the record indicates that joining the Department's waiting list would have been an occasion of fear or humiliation. We point out this distinction not to suggest that the concept of injury developed in Teamsters can only apply in such a climate, but to explain our decision not to extend the application of the futile gesture doctrine in this case.

We hold then that these officers, who made no formal request to join the reserves between 1986 and 1990, and whose names did not appear on the Department's waiting list during that time, cannot establish that they were injured by the Department's post-1986 policies. Some of these officers might well have elected to join the reserves after 1986 if it were not for the Department's restrictive poli-

13

cies, but they have not alleged an injury sufficiently concrete to recover for the implementation of these policies. Cf. Teamsters, 431 U.S. at 368 n.52 (justifying limitation on class of discrimination claimants to incumbent bus drivers as crucial to the"otherwise . . . impossible task" of "distinguishing members of the excluded minority group from minority members of the public at large").**3**

IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

_____

**3** Because none of the officers involved in this appeal had an active request to join the reserves in 1986, we need not reach the question of the retroactivity of the 1974 amendments to the VRRA, which established that state and local government entities were also subject to the Act's requirements. See Pub. L. No. 93-508, 88 Stat. 1578 (1974). Even assuming that the pre-1974 requests to join the reserves could be considered equivalent to post-1974 requests, these requests were not active after 1986, when the Department first became liable for refusing to permit its employees to join the reserves.

14